The opinion of the Court was delivered by
Gibson J. —
It seems to be the better opinion, that in personal actions, the scire facias to revive judgment, lay not at the common law ; but that it was first introduced and its nature declared, by the Statute of Westminster 2. 13 E. 1. St at. 1. c. 45 : before which the plaintiff was put to a new original on the judgment, which after a year and a day was presumed to be released or satisfied. This rule of the common law was for the protection of the debtor; and one object of the Statute was, to preserve to him the benefit of it, while a more speedy and less oppressive remedy was provided for the creditor. Our Act of the 4th April, 1798, was passed for the protection of purchasers, from the debtor ; but, as to the question before us, it is evident the same principles must govern in its construction, that are applicable to the English *377 Statute ; for where the law would raise no presumption of payment in favour of the debtor, there is no reason to suppose the existence of the judgment as an incumbrance, would be a surprise on the purchaser. Both at the common law and under the Statute, the presumption that.the judgment has been discharged, is prima facie; and, therefore, you shall not molest the defendant with an execution, before you have given him an opportunity to shew the truth. By the Act of Assembly a purchaser from the defendant, may, at the end of five years, rely on the presumption as conclusive, and in this respect, its legal effect is different; but the same circumstances that prevent it from arising at all, may sometimes be found in both cases, and are, where they exist, equally operative in each. Now, it is well settled, that where there is a cesset, the computation under the Statute is from the end of the time during which execution was suspended. Why should there be a different construction of the Act of Assembly ? By the Statute, “ If the plaintiff cometh to the King’s Courtj if the recognisance or fine levied be fresh, that is t.o say, levied within the year, he shall forthwith have a writ of execution of the same recognisance ; and if the recognisance were made, or the fine levied of a further time passed, the Sheriff shall be commanded that he give knowledge to the party of whom it is complained, that he be before the justices at a particular day to shew, if any thing he hath to say, why such matters enrolled or contained in the fine, should not have execution.” By the Act of Assembly, “No judgment entered in any Court of record, shall continue a lien on the real estate of any person against whom such judgment, may be entered, during a longer term than five years from the first return day of the term of which such judgment may be so entered, unless the person who may obtain such judgment or his legal representatives, shall within the said term of five- years, sue out a writ of scire facias to revive the same.” Here the first return day of the term is mentioned, because it was absolutely necessary to fix some determinate point of computation, to prevent disputes in ordinary cases ; and not to indicate an intention, that the computation should be governed by it in all cases, and under all circumstances. It will therefore, be seen, that .there would be no greater departure from what may seem positive and *378 mandatory in the one case than in the other; the Act of Assembly being not a jot more peremptory, as to the time when the scire facias becomes necessary, than the Statute. The truth is, that each should be construed liberally, to give fair and full effect to the whole intention of the Legislature. This has already been done by this Court in Young v. Taylor, 2 Binn. 218, where it was held, that the issuing of an execution within the year, continues the lien without resorting to a scire facias. The principle of that decision, if it be right, settles the case before us : and that it is right, I think there can be little doubt. If Statutes were in all cases construed according to the letter, scenes of injustice, which those who enact them would deplore, would abound in our Courts. It is impossible for any Legislature to foresee the infinite variety of cases that will fall within the letter of the law they are about to enact, and yet be out of the scope of its aim. When one of these occurs, what are the Judges to do? It seems to me, they ought to do what their consciences irresistably persuade them the Legislature would have done, if its occurrence had been foreseen. No Judge ever arrived at a wholesome conclusion by following the letter, either of the written or the unwritten law. No one ever supposed that a system complete in all its parts, could be struck out at a heat, by the most able lawgiver that ever lived. The Legislature with all the skill and care which knowledge and diligence can bestow, are able to do little more than mark out principles ; their application, as well as the more minute details, must, in general, be left to the Courts as cases may, from, time to time, arise ; particularly, where the enacting power has legislated only on a part of the subject. A too severe application of the common law rules, forced the Court of Chancery into existence in England. The body of the chancery law, is nothing else than a system of exceptions; of principles applicable to cases falling within the letter, but not within the intention of particular rules; or if falling within the letter, yet not within the intention. The exercise of equity powers in every government of laws, is conclusive proof of a necessity that they be lodged somewhere. Every Tule, from its universality, must be defective : the truth of this is perceived the instant we come to apply it to particular cases. It would be strange to permit the excercise of such *379 powers in respect to laws founded in usage, and which have been gradually formed from the experience of agi-s, and deny them to those that are formed of a sudden, and without any experience of their operation in practice. It is frequently necessarv, for the'purpose of preventing the actual intention of the Legislature from failing of its effect. Then to come to the Act immediately before us. It is obvious, that the person who penned it, had in his mind’s eye, the ordinary case of a judgment for a sum presently due. The mischiif to be remedied, was the distressing state of uncertainty with re. gard to the existence or extinction of incumbrances which arises from the practice so common in Pennsylvania, of paying money to the plaintiff or his attorney, without having satisfaction entered on the docket. From this cause the records were crowded with judgments that were apparently outstanding. The purchaser was frequently embarrassed in procuring the requisite proof of payment, where payment had in fact been made ; he could not tell when he was s-ffe in buying ; whether the purchase money would be sufficient to discharge the incumbrances ; or how to appropriate it, where it would ; so that the free transmission of real property by sale, so congenial to our habits, was seriously impeded. The provisions of the Act of the 13th of April, 1791, requiring the plaintiff to enter satisfaction at the request of the debtor, were found in practice, to be an inadequate remedy. It was therefore found necessary, for the Legislature to apply a more efficacious one. But where, on the very face of the judgment the money appeared not to be duet there was no occasion for Legislative interference. To what end require a revival of the judgment at a considerable expense, which must be borne by some one, where it can furnish no additional notice of the continuance of the lien ; or require that to be reduced to certainty, on which there hangs riot a doubt ? But under the form of writ constantly used, I do not see how such a judgment could be revived. To a scire facias, quare executio non fieri debeat (the form prescribed by the Statute of Westminster. See the Statute in the original Latin, 2 Inst. 469,) the defendant might successfully plead that the cesset had not expired. It may be. said the Act contemplates a writ specially framed, and that the judgment directed to be entered is, that the former judgment be re *380 vived for another period of five years. It is so. But I am not aware that this form has been pursued in a single in.stance, (certainly it has not in many) and this is another circumstance to shew the incalculable mischief that would ensue from a rigid construction of the Act. I would riot only sanction what has been done according to the form now in use, but, as our practice has already been rendered inconveniently loose, and our records almost unintelligible, by the introduction of incongruous forms of proceeding, I would not desire to see it changed : particularly, as it answers every beneficial purpose intended to be effected by the Legislature.
Another point slightly pressed at the argument was this : A scire facias was issued within five years from the expiration of the cesset, which was returned tarde; and after the expiration of the five years, as well as after the succeeding term, an alias was issued, on which the judgment was revived. The question is, whether the proceedings were in time ? It is clear that in England, the suing out of an original or latitat, if it be continued down by vice comes non misit breve, will save the bar of the Statute of Limitations. Carth. 136. 233. Salk. 420. pl. 1. Sid. 53. 2 Keb. 46. The only doubt here, is, whether there was not a discontinuance, by reason of the intervention of a term between the original scire facias and the alias. But even in England, the continuances, although they must actually be entered, are so far matter of form, that they may be written on the writ by the attorney at his chambers. Keb. 140. Sid. 53. With us they are so purely matter of form, that they are never entered at all; and it is a common practice to continue process by an alias or a pluries, with the intervention of even more than one term. Here it would be hard to trip the plaintiff up on this exception; as the first writ performed the office of giving notice, equally as well as if it had been served. The commencement of the proceedings, must, therefore, be referred to the issuing of the original scirefacias.
Judgment reversed, and a venire facias de novo awarded.