The opinion of the court was delivered by
Duncan, J.
This is a question of very general concern, and of immense importance. It is, whether an execution returned levied on land, falls within the provisions of the act limiting the time during which judgments shall remain a lien on real estate.
It certainly has been the received opinion at the bar, and the practice has corresponded with it, that where an execution has been levied on land, the lien continues on the land levied, without a revival of the judgment every five years; and I would pay much respect to such continued practice, without any judicial decision to support it, unless it was in fiat contradiction to the provisions of the act; and it certainly is not a case within the letter of the act, and I know not any proper exercise of judicial power that would justify its extension to a case not provided for, that was not in the view of the legislature, nor to which a scire facias can be at all applicable. A judgment is a general lien on all the defendants’ property: .an execution specific, a seizure of lands into the officer’s hands to satisfy the debt; a pledge somewhat in the nature of a mortgage, and is so considered in bankruptcy.
The intention of the legislature is to be discovered in the preamble, a^id the enacting clause is not more comprehensive than the preamble. The evil in contemplation of the legislature which, was *147 to be remedied was, the perpetual lien of judgments, without any process to continue or revive the same. But where process had issued, and was executed, the effect of that mode of preserving the lien remains as it stood before the law. The act of the 4th of Jlpril, 1798, and the statute of Westminster the 2d, are exactly alike. Whatever would be such a proceeding within the year and day, as would render it unnecessary to issue the scire facias, according to the statute, would continue the lien under the act of 1798, according to some opinions. The reason why the plaintiff is put to his scire facias is, because he is presumed, from the length of time, to have released the execution, and therefore the defendant shall not be disturbed without being called on, and having an opportunity of pleading the release, or showing cause why the execution should not go. 2 Inst. 470. But where a fieri facias or ca. sa. is taken out within the year and not executed, a new writ of execution may be sued out at any time afterwards, without a scire facias, provided the first writ be returned and continuances entered from the time of issuing it, which continuances may berentered after issuing the second writ, unless a rule be made on motion for the proceedings to remain in statu quo. 2 Tid’s Pract. 104. The same construction was put on the act of 1798, as on the statute of Westminster, by this court in Young v. Taylor, 2 Binn. 228, where it was held, that issuing the fieri facias within the year, continues the lien without resorting to a scire facias under the act; and this decision was confirmed by this court, expressly, in Pennock v. Hart, 8 Serg. & Rawle, 378, and the principle of that decision settled the latter case, and there it was said, that a scire facias, which was issued within the five years and returned tarde venit, and after the expiration of the five years, as well as after the succeeding term, an alias was issued, on which the judgment was revived, was within time; and it was said, that as the issuing an original or latitat continued by vice comes non misit hrevem, will save the bar of the statute of limitations, so here entering continuances after an execution issued, will save the bar of this statute, and the entry.of continuances' with us is so much a matter of form, that they are never entered at all; and it is a common practice to continue an alias or pluries with the intervention of more than one term. If this then be the law, that the award and return of an execution will prevent the loss of the lien, how much stronger is the reason for continuing it where an execution is actually levied, where a scire facias after execution executed, could not, as I take it lie, where it is unnecessary, even on a change of parties, and would not justify issuing a' scire facias to bring them in, as was decided the last Philadelphia term in a case not reported, and where it is a universal practice to issue a venditioni exponas after execution levied on land, though both parties, plaintiff and defendant, are dead, without calling in their representatives. The legislature, when they used a legal term, used it in a *148 legal .signification, and the act of 1798 was drawn, as its phraseology shows, by a man learned in the law, and who had under his eye the statute of Westminster. Now, a scire facias is in the nature of an original action. The defendant may plead to it, in bar of execution. Co. Litt. 290, a. The very purpose and demand of the writ is, to show cause why execution should not issue; and such is the form used, and not a writ specially framed to revive the judgment for five years, as was said, (and I know he made diligent inquiry into the practice,) by Mr. Justice Gibson, who delivered the opinion of the court in Pennock v. Hart. But the case of Young v. Taylor, which was the first decision on the act, and which has been since followed in practice, settles this very point. On the 14th of March, 1798, the plaintiff obtained a judgment against Taylor, which was levied, inter alia, on the lots in question. He issued a venditioni exponas to December, 1806, and an alias venditioni exponas to July, 1808, on which the lots were sold. One point was, that the lien was gone, there being no revival by scire facias within the five years, and though the cause was decided against the plaintiff, on another point, to wit, a waiver of his levy, by taking out a capias ad satisfaciendum and having the body of Taylor in custody, yet the court decided the point of lien in his favour, — because, as the court said, “ no change is contemplated in the law, as to the lien of judgments, except those unrevived within five years: nor is the mode of keeping judgments alive, by issuing execution within the year and day, superseding the necessity of issuing a scire facias under the statute of West-' minster the second, abolished thereby.” Here a fieri facias issued and was levied in May, 1800, and no proceeding on that levy or renewal of execution until a venditioni exponas issued to Decemher, 1806, and yet the execution levied kept alive the judgment without any scire facias. And in Pennock v. Hart, the judge who delivered the opinion of the court very justly said,'that e‘ the act of assembly is not a jot more peremptory , as to the time when the scire facias becomes necessary, than the statute of Westmmster.,} Certainly, then, by the statute of Westminster, if execution is levied and remains dormant for more than a year, it is not necessary to revive by scire facias. The effect of levying on lands, continuing the lien on a testatum fieri facias, was fully considered in Cowden v. Brady, 8 Serg. & Rawle, 505; and it was there held, that it was necessary to proceed to issue execution to keep the levy alive by venditioni exponas after venditioni ex-ponas, because the lien was a secret one: but on a levy in the proper county, the record is notice to every man. Suppose five years to expire without scire facias, and a levy to be afterwards made, would not that, levy be good against a purchaser subsequent to a levy, and remain so, though not pursued for more than five years?
The act of 1798 does not touch the lien created by the levy. The five years relate to the first day of the term in which judg *149 ment is entered, not to the teste of the execution, nor time of delivery to the hands of the sheriff. If a leasehold estate was levied on, the levy would not be continued by the act of 1798. So, in the ease of after purchased lands not bound by judgment, the lien attaches from the levy, not from the judgment. That case does not fall within the provision of the law: so that lands not bound by judgment, but by execution only, would not be subject to this limitation; but if there was both a binding judgment and an execution, they would. My opinion is, independent of the decision in Young v. Taylor and Pennock v. Hart, that an execution levied on land retains its lien, and is neither within the letter nor spirit of the act; that it never can be said of a judgment thus far executed, that it is a judgment without any process to continue or revive the same. But when I consider the contemporaneous construction of the act in Young v. Taylor, in 1809, confirmed by tlie decision in 1822, in Pennock v. Hart, and the usage and practice, on the faith of a contemporaneous decision of the highest tribunal in the land, it appears to me it would be a most mischievous construction now to put on this act, that an execution levied fell within the provision of an act, limiting only the time for which judgments should remain a lien on real estate. If it was res integra, without precedent or without practice to the contrary, I would not so construe it. As it is, this new exposition of the act would be attended with serious injury to creditors, who, reposing on the decision of Young v. Taylor, have supposed the liens of their executions continued, without revival of the judgment by scire facias. I give no opinion how far an execution taken out and not levied, and no actual renewal for five years, would keep alive the lien, by a subsequent entry of continuances on the record, where no process had ever issued, but barely on the effect of a levy on particular lands, preserving the lien on the land levied, unless such a length of time had elapsed, as by analogy to the statute of limitations, twenty-one years, a presumption of satisfaction would arise. For after an execution executed, I am of opinion that no scire facias is necessary to keep the lien on the land alive, and that is all that is now decided. My opinion, therefore, is, that the judgment should be reversed, and a venire de novo awarded.
Judgment reversed, and a venire facias de novo awarded.