[PHILADELPHIA, MARCH 27, 1829.]

| The COMMONWEALTH, for the use of BLACK, *against* CONARD and another.

A prothonotary complies, substantially, with the directions of the act of assembly of the 24th of *February*, 1806, when, in entering judgment on a bond with warrant of attorney, upon the application of the party, he enters on his docket the names of the obligor and obligee, in the form of an action, as parties, the date of the bond and warrant of attorney, the penal sum, the real debt, the time of entering judgment, and the date of the judgment on the margin of the record.

An omission by the prothonotary to enter on the record a stay of execution provided for in the warrant of attorney, is not such a neglect of duty or mistake in the prothonotary, as will work a forfeiture of his official bond, and make him liable to the party for the amount due upon his judgment.

A prothonotary who wilfully neglects any duty, is liable upon his official bond to any one who may be thereby injured.

THIS cause was tried at *Nisi Prius*, at *Philadelphia*, in *February*, 1828, when a verdict was rendered for the plaintiff, subject to the opinion of the court upon the facts given in evidence, considered as a special verdict, whether or not the plaintiff was entitled to recover.

The case was this: *John Conard* was appointed prothonotary of the Supreme Court in the year 1817, and on the 31st of *December*, in that year, gave a bond to the commonwealth, in the sum of four thousand five hundred dollars, with *Joseph Barnes* and *Samuel C. Michlin* as his sureties, conditioned that he should " well and truly and faithfully, in all things execute the duties of the said office according to law," &c.

On the 5th of *December*, 1818, *Ann Black* (for whose use this suit was instituted,) brought to the office of the defendant a bond and warrant of attorney to confess judgment, dated the 1st of *December*, 1818, and requested the prothonotary to enter judgment thereon.

The prothonotary, accordingly, entered judgment in the following manner, viz.

(The Commonwealth, for the use of Black, *v.* Conard and another.)

*March* Term, 1818.

" p. p.　*Ann Black*　⎧ Judgment entered 5th of *December*,
139.　　　v. ·　　⎪　1818, on a bond and warrant of at-
　　*Thomas Dobson.* ⎨　torney, dated 1st *December*, 1818,
　　　　　　　　　⎪　for $7568, conditioned for the pay-
5th *Dec.* 1818.　Judgment. ⎩　ment of $3784."

The bond was payable in one year from its date, and the warrant of attorney contained a proviso that execution should not issue until the expiration of one year from the date of the bond.

On this judgment no proceeding took place until the 20th of *November*, 1823, when a *Scire Facias* issued to revive the judgment for another period of five years.　In the mean time, several judgments were obtained against *Thomas Dobson*, and a mortgage was given by him.　All his real estate was sold, and this court decided that none of the money arising from the sale was applicable to the payment of *Ann Black's* judgment.[*]　This suit was instituted upon the official bond of the prothonotary, for an alleged breach of duty in omitting to enter on the docket the tenor of the bond, and the stay of execution provided for in the warrant of attorney; in consequence of which the lien of her judgment was lost.

Two questions were argued,—1. Whether the facts given in evidence proved a failure of duty in the prothonotary?

2. If they did, whether the plaintiff was entitled to recover upon his official bond?

*Scott* and *Tod*, for the plaintiff, referred to the act of the 24th of *February*, 1806, *Purd. Dig.* 409.　2 *Salk.* 417, 660.　5 *Co.* 53, *b.*　*Pennock* v. *Hart*, 8 *Serg. & Rawle*, 369.　*Bombay* v. *Boyer*, 14 *Serg. & Rawle*, 253.　*Black* v. *Dobson*, 11 *Serg. & Rawle*, 94. 1 *Bac. Ab.* 659.　*Commonwealth* v. *Wolbert*, 6 *Binn.* 293.　*Yard* v. *Lea's Executors*, 3 *Yeates*, 349.　*Dallas* v. *Chaloner's Executors*, 3 *Dall.* 500.

· *T.* *Sergeant* and *Chauncey*, for the defendants, cited 3 *Yeates*, 345.　*Act of the* 12*th of March*, 1791, *Purd. Dig.* 749.　*Act of the* 30*th of March*, 1811, *Purd. Dig.* 697.　*Pitt* v. *Yalden*, 4 *Burr.* 2060.　8 *Mass. Rep.* 57.

The opinion of the court was delivered by

SMITH, J.—By the bond, the money was made payable in one year, and in the warrant of attorney to confess judgment, was a proviso, that execution should not issue for one year from the date of the bond.　It was decided, in *Pennock* v. *Hart*, 8 *Serg. & Rawle*, 369, that where the stay of execution was entered on the docket, the judgment continued for five years from the expiration of the stay of execution.　If the prothonotary had added to the entry of the judg-

---

[*] See 11 *Serg. & Rawle,* 94.

(The Commonwealth, for the use of Black, *v.* Conard and another.)

ment, the words, "with stay of execution for one year," the lien would not have been lost.

The interest was punctually paid on this bond, up to the 1st of *December*, 1823.

The official bond of the prothonotary has been sued by *Ann Black*, and the question is,—was this such a neglect or mistake of the prothonotary, as to forfeit his bond, and make him liable to the plaintiff for the amount due upon her judgment?

To render the prothonotary liable, it must appear that he committed a breach of the conditions of his bond. And, to show that he has done so, it is alleged that he did not comply with the directions of the act of assembly, of the 24th of *February*, 1806, in two particulars. *First*, in not entering on his docket the *tenor* of the bond, or instrument presented to him by *Ann Black.* *Secondly*, in not entering the judgment, with the stay of execution therein mentioned. In order to decide, whether the officer did, or did not comply with the directions of the act, we must necessarily inquire what his duties were. The 28th section of the act of the 24th of *February*, 1806, (*Purd. Dig.* 409,) directs, that "it shall be the duty of the prothonotary of any court of record within this commonwealth, on the application of any person being the original holder (or the assignee of such holder,) of a note, bond, or other instrument of writing, in which judgment is confessed, or containing a warrant for an attorney at law, or other person, to confess judgment, to enter judgment against the person or persons, who executed the same for the amount, which from the face of the instrument, may appear to be due, without the agency of an attorney, or declaration filed, with such stay of execution as may be therein mentioned, for the fee of one dollar, to be paid by the defendant; particularly entering on his docket the date and tenor of the instrument of writing, on which the judgment may be founded, which shall have the same force and effect as if a declaration had been filed, and judgment confessed by an attorney, or judgment obtained in open court, and in term time." And it further directs, that the defendant need not pay any costs or fee to the plaintiff's attorney, when judgment is so entered on any such instrument of writing.

I do not think the object of the act was merely to take power from the attorneys, and to give it to the prothonotary; but that it was to enable the citizens to transact their own business in the offices, so far at least as related to the entry of judgments on bonds, notes, or other instruments of writing, in which an authority to enter judgment was contained, without the intervention of attorneys; hence the act declares it to be the duty of the prothonotary, for the fee of one dollar, to *enter* the judgment, *on the application* of any person, who should be the holder (or the assignee of the holder) of a note, bond, or other instrument of writing of the nature mentioned in the act; and that a judgment, so entered, should have the same force and effect, as a judgment on filing a declaration and confes-

(The Commonwealth, for the use of Black, *v.* Conard and another.)

sion of judgment by an attorney.   Clearly, then, since the protho-
notary is required to enter judgment, upon the mere application of
the party, as he had been accustomed to do before the act of the
24th of *February*, 1806, on the authority and instructions of the
attorney, he is bound upon such application to follow the directions
of the party in making the entry, as he was obliged to follow those
of the former, in entering a judgment by warrant of attorney and
confession thereupon; and he is not further bound.   Neither his
responsibility nor his compensation is increased *by that* act.   He
was entitled to the fee of one dollar for entering judgment pursuant
to the *præcipe* of an attorney, and he is entitled to no more for en-
tering it upon the application of the party.   When the party gives
no particular instructions, the prothonotary could only be liable for
omitting to make a special entry, not required by the act of assem-
bly, in case he acted with bad faith.

But it is contended, that the act requires the prothonotary *par-*
*ticularly* to enter on his docket, the date and *tenor* of the instru-
ment of writing, on which the judgment may be founded, and that
the word " tenor" has a legal signification, and means *transcript*
or *copy*.   If this were so, the consequence would be, that every
bond, or other instrument of writing would have to be copied on
his docket, *verbatim et literatim,* which could not have been in-
tended by the legislature, otherwise they would have at once re-
quired and directed the officer to place an exact transcript or copy
of the writing on his docket.   This they have not done, and I there-
fore consider them, when they used the word " tenor," as referring
to the substance or import of the instrument, which it was customa-
ry with attorneys, when they confessed judgments by virtue of
warrants of attorney, to set out.   It is also contended, that the act
of the prothonotary is a mere ministerial act; that he has no discre-
tion, but must obey the directions of the act of assembly.   The di-
rections of an act of assembly ought ever to be obeyed, not only by
the officers of the commonwealth, but by all its citizens.   I am,
however, by no means prepared to say that the officer, in the pre-
sent instance, disobeyed the law or directions of the act, so as to
render him liable to the plaintiff.   It is to be observed, that almost
every prothonotary in this state has a different form of entering
judgments, which, according to the late Judge DUNCAN, is " as va-
rious as their faces." ·  In the case of *Helvete* v. *Rapp*, 7 *Serg. &*
*Rawle*, 306, there is a form varying from the one before us.   There
the record was as follows, to wit:

" *Frederick Rapp* ⎞ Penalty,  -  -  -  $5,450,00
    v.              ⎟ Real Debt,  -  -   2,725,38  .
" *Francis Helvete.* ⎠

" Plaintiff files of record a judgment bond, under the hand and seal
    of defendant, for the sum of 5,450 dollars, conditioned for the
    payment of 2,725 dollars and 38 cents, on or before *November*
    5th next, dated 5th day of this instant, and entered the 17th
    *May,* 1815."

(The Commonwealth, for the use of Black, *v.* Conard and another.)

Here there was no actual judgment entered, at least, in terms there was none,—no copy or transcript of the bond, as now contended for,—merely the penalty, the real debt, the date of the bond, when payable, and the day of entering the same, are stated; and, although the bond was dated on the 5th of *May*, 1815, and entered on the 17th, and payable on or before the 5th of *November*, 1815, yet nothing is expressly entered, as to the stay of execution. This was decided by the Supreme Court, to be a valid entry and a good judgment; and the learned judge who delivered the opinion of the court said, that there being no literal form directed, and no precedent to guide the prothonotaries in the performance of this new duty, each had adopted his own mode, and that many of the entries scarcely presented a feature to inform purchasers, or designate a judgment. In the case under consideration, we think that the prothonotary substantially complied with the directions of the act, when he entered on his docket the names of the obligor and obligee, in the form of an action as parties,—the date of the bond and warrant of attorney,—the penal sum, the real debt, and the time of entering the judgment; and, moreover, the date of the entry of the judgment on the margin of the record, where the same judgment was entered, according to the act of the 21st of *March*, 1772. Should we now, for the first time, give a different interpretation to the act, it would lead to consequences extremely unjust. It is not pretended, that in this case there was any wicked or perverse intention on the part of the prothonotary,—he is free from any such charge: so, too, from the charge of ignorance, and of particular negligence. If, then, he erred at all, it must have been an error of judgment in the interpretation of an act of assembly, which cannot legally render him liable. As well might it be said, that inferior courts were responsible for the errors of their judgments.

But it is further said, that he is liable to the plaintiff, because he did not enter the stay of execution on his docket. It is to be observed, that the stay of execution is no part of the bond, but a part of the warrant of attorney; and it is not pretended, that the omission to state the stay of execution, rendered the entry of the judgment invalid, or the judgment itself void. The prothonotary, acquainted with what had been usually done in other similar cases, placed, in this case, upon his docket, what had been usually placed there before, and no more. It is not alleged that he acted wrong intentionally;—neither he, nor the plaintiff, (indeed very few lawyers,) foresaw or expected the decision in *Pennock* v. *Hart*, made in 1822. Before that decision was published, a *Scire Facias* to revive this judgment actually issued, previous to the expiration of the five years from the entry of the bond. Was it incumbent on this officer to know, or rather foreknow, the construction given to the act in *Pennock* v. *Hart?* The plaintiff had by the entry of the prothonotary a lien—a valid and binding judgment, and a right to issue execution on it at the end of a year: she did not, however,

(The Commonwealth, for the use of Black, *v.* Conard and another.)

issue an execution, nor revive the judgment, but by inattention lost her lien. Whose fault was this? Was it the prothonotary's? The plaintiff evidently thought, as the prothonotary did, that her lien would continue for a period of five years from the day of its entry on record; for on the 20th of *November*, 1823, she issued a *Scire Facias* to revive her judgment—only fifteen days anterior to the expiration of the five years. At this time, I presume, the decision in *Pennock* v. *Hart*, had become known, and it was supposed, might operate on this judgment; the difficulty then started for the first time; and it occurred to the plaintiff that the prothonotary must be liable, although he had entered for her a valid judgment, attaching a lien on the defendant's real estate, and thereby entitling her to a complete right to all the benefits of such a judgment, which she could, at the proper time, have enforced, although the stay of execution was not stated on the record. Besides, the plaintiff could have continued her lien, if she had taken out an execution, or had issued her *Scire Facias* within the proper period; the lien was lost by her neglecting to take the necessary steps to preserve it, or by mistaking the law. In such a case, I never can charge, as a default of the officer, that which is the negligence or default, or ignorance of the party.

In the course of the argument, it was contended by the able and respectable counsel for the defendants, that if there had been any failure of duty in the officer, it was not such as could be embraced by his official bond; and that the plaintiff was not entitled to any benefit from it. In reference to which it may suffice to say, that if the evidence in this case had shown a clear failure of duty in the prothonotary, such a failure would have amounted to a breach of the condition of his bond, of which the plaintiff could have availed herself. A prothonotary wilfully neglecting any duty, which he is bound to perform, is liable within the terms of the condition of the bond, which was intended for, and inures to, the benefit of every citizen who may be injured. Upon the whole, we think the judgment should be rendered for the defendants.

Judgment for the defendants.