## Westmoreland Bank *against* Rainey.

The issuing of a *scire facias*, which is returned *nihil*, will not operate to continue the lien of a judgment beyond five years; hor will the issuing of a *fieri facias* so operate, since the passage of the act of 1827.

A plaintiff having two judgments, which are liens on real estate sold by the sheriff, cannot apply the proceeds to either judgment, at his option, by which indorsers may be affected; but the law will appropriate the fund to the older judgment, whose lien is regularly preserved.

WRIT of error to *Westmoreland* county.

This case originated on a writ of *scire facias* by the *Westmoreland Bank of Pennsylvania* against *Robert Rainey*, to revive a judgment against him. The parties agreed to consider the following facts in the nature of a special verdict.

"On the 4th of December 1816, *James Irwin* drew a promissory note in favour of *John Kirkpatrick*, for the sum of 700 dollars, payable at the *Westmoreland Bank of Pennsylvania*, which said note was indorsed by the said *John Kirkpatrick*, and afterwards by *Robert Rainey*, and discounted at the said *Westmoreland Bank of Pennsylvania*, as will more clearly appear by a copy of said note, which is made a part of this statement. That the said *Westmoreland Bank of Pennsylvania* afterwards had the said note regularly protested for non payment, and brought suit against the said *John Kirkpatrick*, to recover the amount of said note in the common pleas of Westmoreland to *August* term 1817, *No.* 79. The declaration being for money had and received, and not on the note, although the note was the sole cause of action. On which suit a judgment was obtained by default, on the 11th January 1819, as appears by the record and proceedings in said cause, which are made a part of this statement. On the said judgment *No.* 79, August term 1817, a writ of inquiry of damages issued to February term 1822, No. 62 ; and on the 14th February 1822, inquisition held and the damages assessed at 941 dollars and 89 cents ; and on the 15th January 1823, a judgment was obtained on the inquisition, as appears by the record and proceedings in No. 62, February term 1822, which are made a part of this statement. That a *scire facias* to revive the judgment No. 62, February term 1822, issued to February term 1825, No. 12 ; in which a judgment was obtained the 1st February 1826, as appears by the record and proceedings in No. 12, February term 1825, which are made a part of this statement.

"That a suit was brought by the said *Westmoreland Bank of Pennsylvania*, to recover the amount due on the said note against *Robert Rainey*, the second indorser on said note, in the court of common pleas of Westmoreland county, to August term 1817, No. 80.

[Westmoreland Bank v. Rainey.]

The declaration being for money had and received, and not on the note, although the note was the sole cause, of action. On which suit a judgment by default was obtained on the 11th January 1819, as appears by the record and proceedings in said cause, which are made a part of this statement. That a writ of inquiry of damages issued on the judgment No. 80, August term 1817, to February term 1822, No. 63; and on the 14th February 1822, an inquisition was held, and the damages assessed at the sum of 941 dollars and 89 cents; and on the 15th January 1823, judgment entered on the inquisition, as appears by the record and proceedings in No. 63, February term 1822, which are made a part of this statement. That a *scire facias* issued to February term 1825, No. 13, to revive the judgment No 63, February term 1822, in which a judgment was obtained on the 1st February 1826, as appears by the record and proceedings, which are made a part of this statement. To revive the last mentioned judgment, No. 13, February term 1825, the present writ of *scire facias* is brought.

"That the said *Westmoreland Bank of Pennsylvania* instituted a suit against the said *John Kirkpatrick*, to February term 1819, No. 89, on a note dated the 28th October 1818, drawn by a certain *Andrew Sterrett* in favour of a certain *John Ramsey*, indorsed by the said *John Ramsey*, and afterwards by the said *John Kirkpatrick*, for the sum of 15,250 dollars, payable at the said *Westmoreland Bank of Pennsylvania*. That on the 20th day of April 1819, the attorney of the said *John Kirkpatrick* confessed a judgment to the said *Westmoreland Bank of Pennsylvania* in the said suit, No. 89, February term 1819, for 15,518 dollars and 50 cents, as more fully appears by the record and proceedings in the said suit, No. 89, February term 1819, which are made a part of this statement. That at the time of entering the judgment in No. 79, August term 1817, to wit on the 11th January 1819, the said *John Kirkpatrick* was seised and possessed of different parcels of real estate in Westmoreland county, one parcel of which was sold by the sheriff of said county on the 1st of March 1826, on third *pluries venditioni exponas*, No. 85, February term 1826, on judgment No. 84 of August term 1817, *The Westmoreland Bank of Pennsylvania* against *John Kirkpatrick*. That, after paying off all liens against the said *John Kirkpatrick* prior to the 11th January 1819, the time of entering the judgment by default in No. 79 of August term 1817, there remained unappropriated in the hands of the sheriff, a sum sufficient to have discharged the amount due on the said judgment No. 79, August term 1817, if the same was a lien at and from the date of the judgment, to wit the 11th January 1819, and which sum yet remains in the hands of the sheriff unappropriated. That on the 19th February 1827, the court of common pleas of Westmoreland county made an order on the sheriff of said county to pay over the money arising from the sale aforesaid, in discharge of the oldest liens remaining unsatisfied against the said *John Kirkpatrick*, and on the 24th February 1831, a rule was entered

[Westmoreland Bank v. Rainey.]

in said case, to show cause why said money should not be paid to judgment 89, February term 1819, which is undisposed of. That on the 31st August 1830, one other parcel of the real estate, of which the said *John Kirkpatrick* was seised and possessed on the 11th January 1819, and on which no liens existed prior to that day, was sold under a writ of *venditioni exponas* No. 72, August term 1830, on writ of *fieri facias*, No. 90, August term 1819, issued on the said judgment No. 89, February term 1819, the records in which cases are made a part of this statement. That a *scire facias* issued on No. 89, February term 1819, to February term 1829, No. 131, and an *alias scire facias* to August term 1830, No. 20. The records in which cases are made a part of this statement. That the money arising from the sale made on the 31st of August 1830, after the payment of the costs, amounted to 3932 dollars and 43 cents, which sum was paid by the sheriff of Westmoreland county to the said *Westmoreland Bank of Pennsylvania* on the judgment No. 89, February term 1819. That a large balance is yet due the *Westmoreland Bank of Pennsylvania* on judgment No. 89, February term 1819, exceeding the sum claimed by the plaintiff against the defendant in this suit. Towards the payment of which the plaintiff claims the appropriation of the money in the sheriff's hands, as before stated, and unappropriated. If, from the statement of facts in this case, the court should be of opinion that the plaintiff is entitled to recover from the defendant the amount of judgment No. 13, February term 1825, The *Westmoreland Bank of Pennsylvania* v. *Robert Rainey*, judgment shall be entered for the amount thereof with costs. If the court should be of opinion that the plaintiff is not entitled to recover the same in this suit, judgment shall be rendered for the costs of this and former suits on which this suit is brought."

The court below rendered a judgment for the defendant.

*Foster*, for the plaintiff in error, cited, *Pennock* v. *Hart*, 8 *Serg. & Rawle* 369.

*Nichols*, for the defendant in error; whom the court declined to hear.

The opinion of the court was delivered by

KENNEDY, J.—This was a writ of *scire facias quare executio non* sued out of the court of common pleas of Westmoreland county by the *Westmoreland Bank*, upon a judgment which it had in that court against the defendant in error, for the amount of a note which he had indorsed to the bank. The note was drawn by a certain *James Irwin* in favour of *John Kirkpatrick* or order, and indorsed by *Kirkpatrick* to the defendant. A judgment at the suit of the bank was likewise obtained against *Kirkpatrick* for the amount of the note. These judgments in favour of the bank against *Kirkpatrick* and *Rainey* were both rendered originally on the 15th of January 1823, and afterwards revived by writs of *scire facias* issued to February term 1825, in which

judgments of revival were regularly entered on the 1st of February 1826. The amount of each judgment on the 15th of 1823 was, 941 dollars and 89 cents, besides costs of suit. The bank, on the 20th of April 1819, had got another judgment in the same court against *Kirkpatrick*, for the sum of 15,508 dollars and 50 cents, besides costs of suit. Upon this last judgment a *fieri facias* was sued out, returnable to August term 1819, and levied upon two tracts of land lying in Westmoreland county, then the property of *Kirkpatrick*, and continued to be so until they were afterwards sold by the sheriff of that county. The first on the 1st day of March 1826, under a third *pluries venditioni exponas*, sued out of the same court, at the suit of the bank, returnable to February term of that year; and the second tract on the 31st of August 1830, under a writ of *venditioni exponas* to August term of that year, upon the levy under the judgment last above mentioned. The money arising from this last sale, after paying the costs out of it, amounted to 3932 dollars and 43 cents. Upon this last mentioned judgment a writ of *scire facias* was sued out, returnable to February term 1829, upon which the sheriff made a return of *nihil*; and afterwards to August term 1830 an *alias scire facias* was sued out, to which the sheriff returned " served." The money arising from either sale was more than sufficient to satisfy the judgment for 941 dollars and 89 cents against *Kirkpatrick* and all prior liens, leaving out of view the judgment for 15,508 dollars and 50 cents; but the aggregate of both sales is not sufficient to discharge both judgments.

Upon these facts, which are collected from a statement agreed on by the parties in this case, and to be considered in the nature of a special verdict, the question arises, whether the judgment for 941 dollars and 89 cents against *Kirkpatrick* must be first satisfied out of the money made by either sale, before the application of it towards satisfaction of the judgment for the 15,508 dollars and 50 cents. For if it be that the money of either sale ought to be appropriated to the payment of the smaller judgment first, in preference to the larger, the law will make that appropriation of it in the hands of the bank, as it is the plaintiff in both judgments and has received the money of both sales, after satisfying the prior liens upon the lands sold.

Although the smaller judgment is of later date than the larger, yet the lien of it was continued and kept alive until after both sales were made. Its lien commenced with the date of the entry of it, on the 15th of January 1823, and, under a writ of *scire facias* issued returnable to February term 1825, was revived by the entry of a judgment for that purpose on the 1st of February 1826, which was sufficient to have kept it alive for the space of five years then next following. The larger judgment was entered, as we have seen, on the 20th of April 1819, and a writ of *fieri facias* sued out, not returnable to the August term following; under which a levy was made, and returned by the sheriff, upon the lands; from the sale of which by the sheriff, afterwards, the moneys arose, the appropriation of

[Westmoreland Bank v. Rainey.]

which has given rise to this controversy. Under the construction put upon the act of 1798, limiting the liens of judgments upon the lands of the defendants to a period of five years, unless revived by *scire facias* in the manner therein prescribed by this court in the case of *Young* v. *Taylor*, 2 *Binn.* 218; and *The Commonwealth* v. *M'Kisson*, 13 *Serg. & Rawle* 144 ; this levy would have been sufficient to have continued the lien of the judgment upon the lands without a renewal every five years under the act, had it not been for the passage of the act of the 26th of March 1827, which has expressly required a renewal of a judgment every five years, in order to continue its lien, "notwith-standing an execution may have been issued within a year and a day from the rendering of such judgment." This last act, however, allowed two years from its passage for the revival of the liens of such judgments as were continued beyond the period of five years, merely by issuing execution thereon, &c. And by another act passed the 23d of March 1829, the time for this purpose was extended one year longer from that date.

It has been contended in this case by the counsel for the bank, the plaintiff in error, that the requisitions of these acts of assembly have been substantially complied with ; and that the lien of the larger judgment has been continued and preserved. That a *scire facias* was sued out, returnable to February term 1829, which was within two years after the passage of the act of 1827 ; and that although this writ was returned *nihil* by the sheriff, and no other was issued until August term 1830, after an intervention of five terms of the court out of which the first writ of *scire facias* was sued, yet a continuance of the first *scire facias* may be entered from term to term, down to the issuing of the *alias* or second *scire facias*, and thus connect the second with the first, and give it a relation and retrospective operation, back to the date of issuing the first. It has been likened to the case when the plea of the statute of limitations has been avoided by the plaintiff's showing in his replication, that the process in the suit was issued within the six years, and returned *non est inventus* by the sheriff, and regularly continued on the docket or roll from term to term, until the time of declaring. *Salk.* 420, *pl.* 2; 421, *pl.* 6 ; 1 *Lord Raym.* 435 ; *Com. Dig.*, action on the case upon assumpsit *H.* 7 ; 3 *Term Rep.* 664 ; 1 *Dall.* 411 ; 12 *Johns. Rep.* 430. And that in such cases the continuances may be entered at any time. 6 *Term Rep.* 618 ; 7 *Term Rep.* 614. It has also been said, that this principle has been applied to, and sanctioned by this court in the case of a *scire facias* issued under the act of 1798, for the purpose of reviving a judgment and continuing its lien be-yond the five years. *Pennock* v. *Hart*, 8 *Serg. & Rawle* 369.

In order to see whether or not what has been urged by the counsel for the plaintiff in error will be sufficient to answer the purpose, we must refer to the acts of the legislature upon this subject.

The second section of the act of the 4th of April 1798, *Purdon's Dig.* 421, declares, that "no judgment thereafter entered in any

court of record within this commonwealth, shall continue a lien on the real estate of the person against whom such judgment may be entered, during a longer term than five years from the first return day of the term of which such judgment may be so entered, unless the person who may obtain such judgment, or his legal representatives, or other persons interested, shall, within the said term of five years, sue out a writ of *scire facias* to revive the same."

The third section, which directs the course of proceeding on such writs of *scire facias* after that they shall have been sued out, enacts, that they " shall be served on the terre-tenants or persons occupying the real estates bound by the judgments; and also when he or they can be found, on the defendant or defendants, his or their feoffee or feoffees, or on the heirs, executors or administrators of such defendant or defendants, his or their feoffee or feoffees. When the land or estate *is* not in the immediate occupation of any person, and the defendant or defendants, his or their feoffee or feoffees, or their heirs, executors or administrators, *cannot be found, proclamation shall be made in open court, at two succeeding terms* by the oyer of the court in which such proceedings may be instituted, calling on all persons interested to show cause why such judgment should not be revived; and on proof of *due service* thereof, or *on proclamation having been made in the manner herein before set forth,* the court from which the said writ may have issued, shall, unless sufficient cause to prevent the same is shown, *at or before the second term subsequent to the issuing of such writ, direct and order the revival of any such judgment,* during another period of five years, against the real estate of such defendant or defendants ; and proceedings may in like manner be had again, to revive any such judgment at the end of the said period of five years, and so from period to period, or after, as the same may be found necessary."

The sections of the act of 1798 not only direct the time within which a writ of *scire facias* shall be issued, for the purpose of continuing the lien of a judgment, but how it shall afterwards be served and upon whom; and in case the land be unoccupied, and the person or persons on whom it is ordered to be served are not to be found, that then proclamation shall be made by the crier of the court, at two succeeding terms ; and in case of either a service of the writ or proclamation made as directed by the crier, and every case must fall within the one or other of these two classes, *the judgment of revival,* unless sufficient cause be shown, to prevent the same *at or before the same term subsequent to the issuing of the writ, must be entered.* Here is an express limitation of time, within which the judgment of revival may or shall be entered, unless sufficient cause be shown to the court to prevent it. I do not wish to be understood as saying that, unless sufficient cause be shown, that the judgment in all cases must be revived at or before the second term subsequent to the issuing of the writ, in order to keep the lien of the judgment alive; but I think it sufficiently manifest, from this part of the act, that the legislature intended that there should be no unreasonable delay in proceeding

. [Westmoreland Bank v. Rainey.]

upon the writ of *scire facias* after it was sued out.  Now in the present case, the plaintiffs, without any manner of excuse, or cause whatever for it, have lain by, after suing out their writ of *scire facias,* and a return of *nihil* having been made to it by the sheriff, until five or six subsequent terms passed away, without issuing an *alias* writ of *scire facias,* or having *proclamation made,* or taking any step whatever in the cause, to manifest their intention of proceeding further in it.  And during the interim the time allowed by the acts of 1827 and 1829 for issuing a writ of *scire facias,* and proceeding thereon, as directed by the three acts on this subject, expired.  The doctrine of entering continuances, in case of a summons *ad respondendum* sued out by the plaintiff, and returned *nihil* by the sheriff, or of a *capias* returned *non est inventus,* ought not to have any bearing upon, or be applied to the case of a writ of *scire facias* sued out by a plaintiff under acts of assembly, for the purpose of continuing the lien of his judgment upon the real estate of the defendant ; because I consider it repugnant, not only to the letter, but to the spirit and meaning of these acts.  The plea of the statute of limitations was formerly looked upon by judges as odious, and entitled to no favour. Indeed, great astuteness and ingenuity were exercised by them to evade both the plain letter and meaning of the statute, but the judicial mind has been much reformed of late in regard to it.

In *Pennock* v. *Hart,* which has been relied on by the counsel for the plaintiff in error, it was held by this court, that where the *scire facias* was sued out within the five years, and returned *tarde venit,* and an *alias scire facias* was issued after the expiration of that period, and after one term had intervened, the process might be connected, and the commencement of the proceeding should be referred to the issuing of the original *scire facias.*  Without overruling this case of *Pennock* v. *Hart,* it might, perhaps, be sufficient to say, that it is as different from the case under consideration as *one* is from *five ;* or, if there be no difference between the intervention of five terms and one term, I do not see any reason why a distinction should be taken between five terms, and twenty or one hundred, and thus the lien of the judgment might be extended to an unlimited period, by suing out a *scire facias* within the first period of five years after the entry of it, and having a return of *nihil* or *tarde venit* made to it by the sheriff, and then after that, by entering the continuances upon the docket once in every succeeding term of five years, without suing out, *in fact,* any subsequent writ of *scire facias ;* which, I think will be admitted by every one, would be a palpable disregard of the directions of the acts on this subject.

It may also be observed, that the return to the first *scire facias* in *Pennock* v. *Hart* was *tarde venit,* and not *nihil.*  I consider *tarde venit,* if true, a proper return to the writ, because no act of the legislature will be construed to require an impossibility ; but I doubt very much whether *nihil* is a sufficiently expressive return to answer what is required by the act of 1798, which has been partly recited.

It is certain that *nihil* does not imply a service of the writ ; and it is equally clear from the terms of the act, that the writ ought to appear, from the return of the sheriff made to it, either to have been served upon the person or persons mentioned in the act, or that " the land or estate was not in the immediate occupation of any person, and that the defendant or defendants, his or their feoffee or feoffees, or their heirs, executors or administrators could not be found." One or other of these two returns ought to be made substantially, in some shape, by the sheriff; if he have sufficient time before the return day of the writ to enable him to do so: if not, then he should return *tarde venit.* No other than one of the two first will entitle the plaintiff to a revival of his judgment, so as to continue in force its original lien according to the requisitions of the act. If, then, the return of *nihil* is to be considered as equivalent to, or substantially implying all that is required in the second case, where the land is unoccupied, and the defendant, &c. not to be found, the plaintiffs failed entirely to have their judgment revived by proclamation, as directed by the act. They, instead of seeking a revival of their judgment, agreeably to the provisions of the act, lie by for the space of sixteen or seventeen months, and then proceed by suing out another writ of *scire facias,* which shows that their counsel must have considered that the return of *nihil* was not such a return as entitled them to demand a judgment of revival by proclamation ; or otherwise, they had slept too long, and suffered the time to pass by within which, according to the act, it should have been done. I am, therefore, decidedly of opinion, that the lien of the larger judgment had expired before the sales of the last tract of land ; and it is plain that it cannot be claimed by the plaintiffs, to the exclusion of other lien creditors.

But it is contended, in the next place, that as there is no other than they who had a lien upon this last tract of land at the time of the sale of it, that they have a right to apply the whole of the money arising from the sale towards paying the larger judgment, although no lien on the land at the time of sale, to the exclusion of the smaller judgment, which was a lien at that time ; because they are the plaintiffs in, and the owners of both judgments. I am inclined to think that the plaintiffs could not do this without the consent of the defendant in the judgments, even if no other person were interested in the appropriation of the money ; but I give no decided opinion upon this point, as I deem it unnecessary to the decision of the present case. The object of the plaintiffs is obvious. They consider the security which they have for the payment of the debt in this larger judgment as insufficient, and therefore it is that they wish to have all the money arising from the sale of *Kirkpatrick's* property appropriated to the payment of it, and to make *Rainey,* who is bound only as an indorser, subsequent to *Kirkpatrick,* who is bound as the first, to the plaintiffs for the payment of the debt embraced in the smaller judgment, which was a lien upon the land at the time of the sale, pay to them the whole of this smaller

E

[Westmoreland Bank v. Rainey.]

judgment.   *Rainey* resists the application which the plaintiffs wish to have made of the money, and demands that the smaller judgment, for which he is liable, as the last indorser, shall be paid first out of it.   It must be admitted that he has a deep interest in this matter; and as neither *Irwin*, the drawer of the note, nor *Kirkpatrick*, the first indorser of it, is able to indemnify or to reimburse *Rainey* the amount, or any part of it, if he were to pay it, it is manifest, that if the money arising from the last sale be not appropriated according to seniority of liens, or rather, if it be applied to the payment of a judgment that was no lien, in preference to one that was a lien at the time of sale, *Rainey* will·be a loser to the amount of the smaller judgment.   It appears to me that *Rainey* has a right at law, as well as in equity, to require that the lien judgment shall be first satisfied; because this is the order prescribed by law :  again, if he had paid to the bank this debt, for which this latter judgment was entered against *Kirkpatrick*, he would in equity have been entitled to an assignment of the judgment, and to have been subrogated *to all the rights* of the bank, as both *Irwin* and *Kirkpatrick* were bound to keep him indemnified, upon the principle of their being principals with respect to him, and his standing in the relation of surety for them.   The plaintiffs must, therefore, be considered as having received the money arising from the last sale, in satisfaction of the principal and interest due upon the smaller judgment, so far as it was necessary for this purpose, which, of course, extinguishes the debt and interest involved in the judgment of *Rainey* upon which the *scire facias* in this case was issued.   The costs of that judgment, and of this suit by *scire facias* upon it, have never been paid, and cannot be claimed out of the money arising from the sale of *Kirkpatrick's* property :  *Rainey* is still liable for the payment of them; and as this was all that the judgment of the court below was rendered for against him, it is conceived to be right, and, therefore, affirmed.

Judgment affirmed.