*Philadelphia,*
*Saturday,*
December 30.

## YOUNG *against* TAYLOR and BARRON.

If a plaintiff levies a *fi. fa.* upon the defendant's lands, and then charges him in execution upon a *ca. sa.,* either the *fi. fa.* or *ca. sa.* may be set aside at the election of the defendant; but if he submits to the *ca. sa.* and obtains a discharge from it by the insolvent law, then the *fi. fa.* and all proceedings under it are gone; and if the plaintiff sues out a *venditioni exponas* and sells, the court will not permit the sheriff to acknowledge a deed to the purchaser

If the lands of the defendant are aliened by

IN this case, the sheriff having requested the court to take his acknowledgment of a deed to the plaintiff for certain lots sold to him under his execution against the defendants, the court, upon the motion of *Binney* for *J. G. Wachsmuth* and others, and upon a statement of the facts hereafter mentioned, which appeared of record, refused to receive the acknowledgment until counsel should be heard in opposition to the deed.

The case being now called up for a hearing, *S. Levy* for the plaintiff, objected to the interposition of counsel except on behalf of the defendants; but it being answered, that the facts would shew a privity between *Taylor* and the persons who opposed the acknowledgment, the court directed the evidence to be opened.

On both sides the material facts were these: On the 20th of *April* 1792, *John M. Taylor,* one of the defendants, was seised of *two lots* in the city of *Philadelphia,* (the property sold to *Young*) which on that day he conveyed to *Mordecai Lewis* and others in trust for his creditors. On the 10th *July* 1792, *Lewis* and others assigned to *Joseph Ball* upon the same trusts; and on the 8th *October* 1800, *Ball* and *Taylor* and wife joined in a conveyance to *J. G. Wachsmuth* in

him before the plaintiff's judgment or execution, the plaintiff is not obliged to take a *scire facias* against the terre-tenants, before he can have execution in the hands of the alienee.

An execution within a year and a day, continues the lien of a judgment, without resorting to a *scire facias* under the act of 4th of *April* 1798.

*Qu.* Whether a sale of the defendant's lands under a younger judgment, affects the lien of an older one?

consideration of four thousand dollars. The conveyances in trust were never proved or acknowledged until the 15th *March* 1798, and on the 16th they were duly recorded. The conveyance to *Wachsmuth* was acknowledged the day it bore date, and was recorded the 22d *January* 1803.

On the 11th *December* 1797, a judgment was confessed in this court by *Taylor* in favour of *Gabriel Furman*, for thirty thousand dollars the damages laid in the declaration, to stand as a security for what should be recovered at the trial; and on the 16th *March* 1798 the debt was liquidated at 16,717 dollars 34 cents.

On the 14th *March* 1798, the plaintiff obtained judgment in this suit for 1495 pounds, with a stay of execution for five months.

On the 19th *March* 1798, *Samuel Williams* obtained judgment in this court against *Taylor* for one hundred and fifty-seven dollars sixty-four cents; and a *fi: fa:* under this judgment being levied upon the *two lots* in question, they were sold on a *venditioni exponas* to *Gabriel Furman* for one hundred dollars, and a deed executed to him on the 13th *March* 1800, which on the 26th *November* following was acknowledged in court. On the 2d *February* 1801, *Gabriel Furman* conveyed to *J. G. Wachsmuth.*

On the 11th *July* 1799, the plaintiff issued a *ca. sa.* against the defendants, upon which *Taylor* was committed to prison on the 15th; the writ was returned *non est inventus* as to *Barron.* On the next day *Taylor* was discharged from custody by the Chief Justice, upon his giving bond according to the act of 4th *April* 1798, to comply with the insolvent law at *September* term; but he took no step at that term, and in *December* term following he merely filed his petition, without prosecuting the matter further.

On the 21st *May* 1800, the plaintiff issued a *fi: fa:* against the defendants which was levied *inter alia* upon the *two lots* in question, and in *August* following they were condemned. On the 13th *December* 1800, he issued an *alias ca. sa.* upon which *Taylor* was again arrested, and on the 16th *December* he was again discharged from custody on giving a bond with the same condition as before, which was accepted by the plaintiff's attorney, and filed in court. Agreeably to this bond, he applied for his discharge under the insolvent

1809.

YOUNG
*v.*
TAYLOR.

law at the *December* term, and in *January* 1801, he was discharged in the usual manner. *Young* afterwards issued a *venditioni exponas* to *December* term 1806, under which part of the property condemned in *August* was sold; and by an *alias venditioni* to *July* term 1808, the *two lots* were sold to him for 1050 dollars, and the deed in question executed by the sheriff.

Upon these facts, *Binney* and *Rawle* contended that such an interest was shewn in *Wachsmuth* and others his vendees, as entitled them to take *Taylor's* place in opposing the deed to *Young*. They are purchasers under an assignment from *Taylor* before all the judgments, and also under a sheriff's deed duly acknowledged in court. At the same time no decision is asked upon title in this summary way; it is disclosed to shew an interest in the question, and for no other purpose.

The objections to the acknowledgment of the present deed, rest partly upon the fact that the property has already been sold under an execution against the same defendants, sanctioned by the acknowledgment of the sheriff's deed; but principally on the invalidity of the plaintiff's proceedings; and as they cannot be heard collaterally in an ejectment, the law of 1705 in devising the ceremony of acknowledgment, impliedly enjoins upon the court to hear them in this stage of the cause. They are four. 1. That as there had been an alienation of the lots prior to the plaintiff's judgment and execution, he could not execute the land, without previously issuing a *scire facias* to the terre-tenants. 2. That the plaintiff's judgment being more than five years old at the date of his *venditioni*, and never having been revived according to the act of 4th *April* 1798, its *lien* on these lots was lost, and the intermediate disposition of them to other persons, was a bar to his execution. 3. That the *ca. sa.* upon which *Taylor* was charged in execution was a satisfaction of the plaintiff's judgment; and the *fi: fa:* being issued while the *ca. sa.* was in force, the levy and condemnation were irregular; or if not, then the *alias ca. sa.* and commitment were a complete waiver of the *fi. fa.*, so that all subsequent proceedings under it were void. 4. That the lots having been once sold under a younger judgment, and bought by the oldest judgment cre-

ditor, no execution could issue from this court to sell them a second time as the property of *Taylor*.

1. It is a general rule of law, that where the inheritance or freehold of land is to be charged by reason of any suit or writ, the tenant of the freehold ought to be made a party to it. *Mallory* v. *Jennings* (a), *Jefferson* v. *Morton* (b). Hence it has become a settled practice not to reverse a fine without a *scire facias* to the terre-tenants, who ought not to be put out of possession without warning, and who may have a release to plead, or some other defence to make. 1 *Salk.* 339. *Tully's case* (c), *The case of Eccleston and wife* (d), *Cary* v. *Dancy* (e), *Clerk* v. *Hardwicke* (f). It is a provision introduced for the protection of purchasers, to give them an opportunity of making that defence, which after execution they may be precluded from making; and if this be the law upon a voluntary alienation by the defendant, how much more where the terre-tenant is the alienee of the sheriff, whose sale has been sanctioned by the court.

2. The first section of the act of 4th *April* 1798, 4 *St. Laws* 301, provides that no judgment then on record, shall continue a lien on the real estate of the defendant during a longer term than five years from the passing of the act, unless the plaintiff or his representatives shall within that period revive it by *scire facias*. The object of the law was express notice of the judgment to all parties interested; for the third section directs service of the *scire facias* upon the terre-tenants and the defendant or his feoffees, and where they cannot be found and there is no occupant, a proclamation in open court at two successive terms. *Young's* execution within the year and day is of no importance; the law is an express unqualified destruction of the lien, unless there is a revival by *scire facias*. The evil to be remedied was the continuance of liens in perpetuity, without express notice to purchasers; the remedy was a revival by *scire facias* every five years with notice. A continuance of the judgment by execution, was therefore in nowise contemplated by the law, as rendering the *scire facias* unnecessary, because it was in part the very evil to be cured. The execution is not fol-

(a) 2 *And.* 160.  (c) 2 *Salk.* 598.  (e) *Cro. Eliz.* 471.
(b) 2 *Saund.* 6.  (d) *Dyer* 321 a.  (f) *Moore* 524.

1809.

YOUNG
v.
TAYLOR.

lowed by notice to any one; and after it has once issued, the judgment, if affected by it at all, continues to be a lien for-ever, without any further proceeding. The law on the other hand demands notice in every period of five years, upon pain of losing the lien. The uses of the execution and of the *scire facias* are also entirely different. The one is to entitle the plaintiff to an execution at any future day, the other to preserve the lien of his judgment. His lien exists for five years after judgment, whether execution issues or not; in like manner his judgment may be continued so as to entitle him to execution, although it has lost its lien. It follows therefore that *Young's* judgment had lost its lien on these lots, if it ever had any, and that he could not issue execution against them in the hands of an intermediate purchaser.

3. *Taylor* was committed to prison upon a *ca. sa.* in *July* 1799. When the body of the defendant is taken in execution, although it be not in itself any satisfaction, yet as to him there cannot be any other execution. *Williams* v. *Cutteris* (a), *Foster* v. *Jackson* (b), *Cohen* v. *Cunningham* (c). Notwithstanding the discharge by the Chief Justice, the *ca. sa.* continued in force, because the condition of the bond was, that in case he failed to obtain his discharge, he would surrender himself to prison to be charged by the plaintiff's execution; 8 *St. Laws* 136; and in that case he would have been in custody under the original *ca. sa.* While this *ca. sa.* was in force, the *fi. fa.* could not issue; particularly as at all events the former writ had destroyed the plaintiff's lien, and set up other judgments in preference to it. *Freeman* v. *Ruston* (d). But if the *fi. fa.* was valid, the *alias ca. sa.* and commitment at *December* term 1800, do most clearly overthrow it, and make void all subsequent proceedings built upon that foundation. Two executions cannot be in force at the same time upon the same judgment. Had *Taylor* when in custody applied to the court, they would either have discharged him, or quashed the *fi. fa.*, at his election. *Stamper* v. *Hodson* (e). He chose to assent to the *ca. sa.* and obtained his discharge by the insolvent law in consequence of it. The *fi. fa.* was therefore at an end. *Young* cannot now be per-

(a) *Cro. Jac.* 136. 143.      (c) 8 *D. & E.* 123.      (e) 8 *Mod.* 230.
(b) *Hobart* 57. 59. 60.      (d) 4 *Dall.* 214.

mitted to say that the *alias ca. sa.* was void, for the purpose of setting up the prior execution; he cannot take advantage of his own wrong; but the court will say upon our sugges-tion, what it would have said upon the motion of *Taylor*, that the *fi. fa.* was waived, that it ought to be quashed, and that no valid sale can grow out of it.

4. The last point is of immense importance to purchasers at sheriff's sales. A sale, even under the youngest judgment, when confirmed by the court, passes all the defendant's estate; and upon every principle it should be held to bind all other judgment creditors, and to debar them from executions against the same property. It should bind them upon the ground of laches, because being a public act, they are presumed to have notice, and should make their objections before the deed is acknowledged. It should bind them upon equitable principles, because the best price is gotten for the land, and that is distributed among the judgments according to their priority. It ought to bind them upon strict principles of law, because the right to sell in satisfaction is incident to every judgment, and by the acts of 1700 and 1705, 1 *St. Laws* 12. 67, a sale made under any judgment passes an estate to the purchaser as fully as it was to the debtor. It is analogous to a sale of goods under a younger *fi. fa.*, which, however it may affect the sheriff, passes a title to the vendee. *Smalcomb* v. *Buckingham* (a), *Clerk* v. *Withers* (b). In practice such a sale is universally deemed binding; no inquiry is ever made by purchasers into the rank of judgments; and if this court should hold otherwise, it would not only produce the greatest confusion in titles hereafter, by giving a sanction to ten or twenty sheriff's deeds for the same property upon executions against the same man, but would shake a great many titles already acquired. If however the youngest judgment cannot sell, none but the oldest can; and here the proprietor of the oldest bought at the sale under the youngest, and confirmed it. There can be no doubt that *Furman's* judgment was the oldest lien. It was not an interlocutory judgment in *December* 1797, but a final judgment by agree-ment for a large sum, as security for the payment of a smaller sum to be subsequently ascertained.

(a) *Garth.* 419.        (b) 6 *Mod.* 292.

*S. Levy* and *Dallas* for the plaintiff insisted, that an interference of the court in the way required was without precedent; and that however it might be insinuated that the object was not to try the title, yet if the acknowledgment was refused, it would be decisive as to the title of the plaintiff, who without it could never attempt an ejectment. The plaintiff can prove upon a trial, that *Wachsmuth* has neither a legal nor an equitable title; that the assignments by *Taylor* were waste paper, never enforced, never supposed to have any validity, never even used to restrain *Taylor* from the control and alienation of the property assigned, until two days after *Young's* judgment, when they were hunted up and recorded to defeat it; that *Furman's* judgment was not only interlocutory until after *Young's* judgment was entered, but that *Furman's* debt was provided for and satisfied by an assignment of personal property; and that the sale of the lots for one hundred dollars under the judgment of *Williams*, was not supposed to be worth any thing, the reduced price being the consequence of representations at the sale, that *Taylor* had no estate to be sold. These are objections which in this summary way we cannot examine. The plaintiff is entitled to bring them before a jury; the right is secured to him by the constitution; and the interposition of the court will therefore not only be in collision with the recent case of *The Pennsylvania Insurance Company* v. *Ketland* (a), but it will deprive the plaintiff of his constitutional rights. In fact the court has but a ministerial duty to perform in receiving the acknowledgment; it is the right of the sheriff to make it. Be this, however, as it may, the objections to the acknowledgment have no weight.

1. A *scire facias* against the terre-tenants, except in the case of a mortgage, has never been heard of in *Pennsylvania*, as a preliminary to execution. It is not required by the act of 1705, under which sales of land are made; and it would lead to a total defeat of the judgment creditor by collusive alienations, if it should ever obtain. It is not required even in *England. Fitz. N. B.* 597. The authorities cited are not to the point. They apply exclusively to two descriptions of cases, which have not a feature of resemblance to the present.

(a) 1 *Binn.* 499.

The first is where there has been a change of parties by death; and there a *scire facias* introduces the new party, whether heir or terre-tenant. Such is the case of *Jefferson* v. *Morton.* The other is where the proceeding is to reverse the title under which the terre-tenants hold. Such is *Tully's case, Cary* v. *Dancy,* and the case of *Eccleston and wife.* There is a third class of authorities, where the point has been raised, whether without notice to the terre-tenants, the land could be charged by the execution, as *Mallory* v. *Jennings,* and *Clerk* v. *Hardwicke;* and it was well decided that it could not be. But the meaning of those decisions is, that the terre-tenant would not be *bound,* unless a party. Nor is he here. The judgment binds nothing but the defendant's estate; the execution sells nothing else; and upon an ejectment, the deed does not conclude the terre-tenant, but he is at liberty to shew that the defendant had no estate. In *Graff* v. *Smith* (a) the execution of an intestate's lands in the hands of a purchaser was resisted upon every ground; but the want of a *scire facias* was not thought of.

2. The act of 4th *April* 1798 has no impression upon the case. The mischief before that law was, that judgments upon which there had been no proceeding, were alive as to the lien, though dead as to the purpose of execution. The law therefore provided, that unless such judgments were revived by *scire facias,* they should not bind the land. But a judgment upon which an execution has issued in due time, never dies; and therefore it cannot possibly require revival. The object of the *scire facias* it is said, is to give notice. But can it be doubted that an execution executed, as *Young's* was, is equivalent to a *scire facias,* in the particular of notice? The intention of the legislature is in some measure to be obtained from the preamble; and by that it appears, that all the evil in contemplation, was the perpetual lien of judgments, *without any process to* CONTINUE *or revive the same.* Here there is a clear exception of judgments upon which process has issued; so that the mode of preserving a lien by issuing execution, remains as it was before the law.

3. The general principle that a *ca. sa.* executed debars the plaintiff from any other execution, may be admitted; but the

(a) 1 *Dall.* 481.

circumstances of the case raise a distinction. The first *ca. sa.* was not a perfect execution, because the plaintiff lost the benefit of his writ by the discharge of *Taylor* from custody. Upon the defeat of this execution by operation of law, the remedy against the land revived. If while *Taylor* was in prison, a younger judgment had sold the land, *Young* it is true could neither have vacated the sale, nor claimed the proceeds; it is an inconvenience arising out of the law, and such is the decision in *Freeman* v. *Ruston.* But that is not the present case. The *ca. sa.* was defeated. It could never be executed again. If *Taylor* did not chuse to perform the condition of his bond, the remedy was on the bond, and not by charging him again on the old writ; and it follows therefore that he had a perfect right to levy the *fi. fa. Selwyn's N. P.* 548, 549, 550.; 8 *St. Laws* 138. *sect.* 19. The *fi. fa.* being regular, the only question then is as to the effect of the *alias ca. sa.* While the *fi. fa.* levy and condemnation were in force, *Young* could not in any way discontinue the *fi. fa.* without leave of the court. *M'Cullough* v. *Guetner* (a). He could do no act which amounted to a discontinuance; and as two executions under the same judgment, cannot be in force at the same time, it follows that the *alias* was void, and did not affect the *fi. fa.* 1 *Crompt.* 531. 536. 537.; 2 *Tidd* 912.; *Hobart* 2.; 11 *Viner* 32, *pl.* 6. The court will now do the same in relation to the *alias ca. sa.*, as they would have done in 1800; and they could not but have said at that time, that the *ca. sa.* which to say the least of it was irregular, should not be deemed a waiver of process previously well executed. In fact, by the positive provision of the 17th section of the insolvent law, 8 *St. Laws* 136, after the order of discharge by the Chief Justice in 1799, no *ca. sa.* could issue against *Taylor;* so that the *alias* was void by the act of assembly, as well as upon general principles.

4. The fourth point it is the less necessary to discuss, because every thing said under it, goes to the matter of title, which may be used upon an ejectment; but as a general position, it can never be maintained, that the mere acknowledgment of a sheriff's deed, however fraudulent the proceeding, shall debar all the world from selling the land again, and

(a) 1 *Binn.* 214.

contesting the first deed before a jury. If the proceedings are regular, the court are bound to give deeds even to fifty contending purchasers, that they may resort to the constitutional tribunal of a jury, for a decision on their title.

Tilghman C. J. gave no opinion, having been of counsel in *Furman's* suit.

Yeates J. delivered the opinion of the court.

*Samuel Young* has applied to the court to accept the sheriff's acknowledgment of a deed for two lots of ground in the city of *Philadelphia*, levied on by the sheriff as the property of *John M. Taylor*, and sold at public vendue for 1050 dollars. It would be a matter of course to take the acknowledgment, if good ground is not shewn against it. Without this sanction of the court, the sheriff's deed can have no legal operation; and it behoves the party who opposes the sale on the ground of irregularity, to make his exception, *previous* to the court's approving of the deed. For it has often been decided, that on the trial of an ejectment instituted by the sheriff's vendee, the court will not inquire into the formality of the proceedings on which the sale was founded; it amounting in fact to an attempt to reverse the process of one court in one cause, by another court *collaterally* in another cause.

The counsel of Mr. *Young* have contended, that *Taylor* alone could except to the acknowledgment; and that Messrs. *Wachsmuth* and *Fisher* not being parties to the record, were incompetent to take the exception. They cannot be considered as mere interlopers, but are interested in the present application. There is some kind of privity between them and *Taylor*. They claim the lots of ground in controversy, both under a conveyance from *Taylor* and Mr. *Joseph Ball* his assignee, and under a prior sale of the premises as the property of *Taylor* by a former sheriff. If it clearly appeared on the representation of a mere stranger, that the proceedings had in the cause were erroneous, and the process of the court abused, would the members of this court shut their ears against the information? There is now no appeal from the decisions of this court to another tribunal; and it is particularly incumbent on us to see that justice is dispensed in its accustomed channels.

We desire to be fully understood in the present instance. Our uniform practice has been to refuse trying the title of lands, or the property in goods levied upon, under a writ of *fieri facias.* The reason is perfectly plain. It would deprive the adverse party of his constitutional right to a trial by jury. We lay it down as a general rule; but do not however assert that there may not be exceptions to it, or that such a case might not occur, as would demand our immediate interposition. The circumstances must be strong indeed which would warrant it. We mean to insinuate no opinion whatever upon the conflicting titles here.

1st. The first objection made to the proceedings under the judgment of *Young* against *Taylor*, is, that no *scire facias* has issued against the terre-tenants of the premises, upon the change of title. We do not think this exception well founded. Neither the act of assembly of 1705, nor the practice which has obtained under it, demands such process. In fact it would render the provisions of the act illusory. A defendant might on judgment obtained against him, and previous to the issuing of a *fieri facias* against him, alien his lands. When the *scire facias* issued against the terre-tenant, he might again alien and change the possession before judgment thereon, and thus the proceedings might be protracted by adroit management for an indefinite period of time, and the remedy of the creditor by execution against the lands of the debtor, be rendered fruitless.

2d. The second objection, founded on the act of assembly of 4th *April* 1798, " limiting the time, during which judg-" ment shall be a lien on real estate," seems without just grounds. The first section of that law is alone applicable to the present case, as it respects judgments on record at the time of passing the act. It directs " that no such judgments " shall continue a lien on the real estate of the defendant " during a longer term than five years, unless the person " who has obtained such judgments, or his legal representa-" tives, or other persons interested, shall within the said term " of five years sue out of the court, wherein the same has " been entered, a writ of *scire facias* to revive the same." No change is contemplated in the law, as to the lien of judgments, excepting those unrevived within the five years; nor is the mode of keeping judgments alive by issuing an execu-

tion within the year and day, superseding the necessity of issuing a *scire facias* under the statute of *Westminster* 2d, abolished thereby. The *scire facias* operates as notice to the parties interested, and evidences the intention of the creditor to claim the lien of his judgment. But it will not be denied that the plaintiff taking out a *fieri facias*, levying on the goods and lands of the defendant, and condemning the lands by an inquest, are matters of notoriety, and in point of notice of the creditor's pretensions, tantamount to a *scire facias*. Such I take it, has been the construction of this section of the act.

3d. I proceed to the third objection, which seems to us to be solid. Here it becomes necessary to take a summary view of the facts. *Young* obtained his judgment against *Taylor* and *Barron* on the 14th *March* 1798, with a stay of execution of five months, which expired on the 14th *August* following. On the 11th *July* 1799, within the year, he issued his *ca. sa.* returnable to *September* term following, upon which the sheriff arrested *Taylor* on the 15th *July*, and had him in custody, but returned *non est inventus* as to *Barron*. On the next day viz. 16th *July*, *Taylor* applied by petition to the Chief Justice of this court, and gave bond with security, " conditioned that he should appear before this court at " the *September* term 1799, and surrender himself to prison, " in case on his said appearance he did not comply with all " things required by the act of 4th *April* 1798 to procure " his discharge; or if the proceedings should be stopt by in- " formation upon oath or affirmation, and in the trial of the " issue he should be found guilty, he should immediately " surrender himself to prison to be charged at the suit of " *Young*." *Taylor* was thereupon discharged out of custody; but did not apply for the benefit of the insolvent act at the *September* term. On the 28th *December* 1799 he did apply by petition to this court as an insolvent debtor, but took no further step to comply with the law. It seems clear that *Taylor* was liable to be charged in execution at the suit of *Young*, for not appearing in court in *September* term 1799, and complying with the terms of the law agreeably to the condition of his bond: but instead of charging him in execution, *Young* took out a *fieri facias* returnable to *September* term 1800, which in the month of *May* was levied upon

goods as per inventory, a lot on Centre Square No. 2176, the two lots in question No. 1776 and 1777 on *Market* and *Twelfth*-streets, and a ground rent of thirty dollars, and the lands were condemned by inquisition on the 30th *August* 1800. On the 13th *December* 1800, *Young* by his attorney Mr. *Hallowell* issued an *alias ca. sa.* on his judgment, returnable the 27th *December* 1800, on which the sheriff arrested *Taylor* and had him in custody, and returned that service had been forbidden as to *Barron. Taylor* again applied, and on the 16th of the same month he gave a new bond with other sureties, conditioned as before, which was accepted by Mr. *Hallowell* and filed in court. On the next day he filed his petition in court with the proper schedules, and the court adjourned the consideration thereof to the 19th *January* 1801, with leave to add the names of two creditors to his list; and finally he was discharged by the court on complying with the terms of the act of 4th *April* 1798, and *Nathan Baker* was appointed assignee. Afterwards, upon a *venditioni exponas* returnable to *December* term 1806, the ground-rent of thirty dollars was sold to *Young* for two hundred and eighty dollars; and upon an *alias venditioni exponas* to *July* term 1808, the two lots in question were also sold to him for 1050 dollars, and a deed having been executed therefor, this court are called upon to receive the sheriff's acknowledgment thereof.

On this statement of facts, it appears that *Young* elected his remedy in the first instance against the person of *Taylor* to *September* term 1799, who was thereupon in custody, and having forfeited his bond by not complying with the terms of the law, he was liable to be charged in execution at the suit of *Young*. It seems highly questionable whether, under the discharge of *Taylor by the Chief Justice*, he could withdraw his *ca. sa.* and issue a *fieri facias* to *September* term 1800, without the sanction of the court. But while the *fieri facias* was in full operation, he certainly could not legally proceed to arrest the body of his debtor upon a *ca. sa.* A plaintiff may take out one execution against the body of a defendant, and another against his goods at the same time, but both cannot be served. The cases adduced on the argument fully shew this; and it is admitted on both sides, that issuing of the *alias ca. sa.* was erroneous, though they differ in one particular, whether it

was merely *void*, or only voidable. There can be no doubt but that *Taylor* might have avoided it by writ of error to another tribunal, or by motion to the court. But the question is, whether *Taylor* having submitted thereto, and the proceedings on his ultimate discharge being founded thereon, it is competent to *Young* at the distance of nine years to annul his own act, and thus remove an obstacle to his *fieri facias*, to the manifest injury of strangers to his proceedings? It is not necessary for us to determine in this stage of the business, whether the court would interfere on the application of *Young* to set aside the *alias ca. sa.* It is sufficient for us to decide, that upon inspection of our records as they now appear, the *alias ca. sa.* being a continuance of the original *ca. sa.*, and the *fieri facias* having issued pending the operation of the *ca. sa.*, the *fi. fa.* was irregularly issued, and on the motion of *Taylor* would then have been set aside, and necessarily must now be set aside. Such is the irregularity of the proceedings in our view of the case, that we do not deem ourselves warranted under such circumstances to receive the acknowledgment of the sheriff's deed.

Mr. *Young* is not precluded by our decision from trying the title of his adversaries. An action may be instituted in the name of Mr. *Baker* the assignee under the acts of insolvency; or, if his counsel shall judge it to be most advisable, he may endeavour to make his proceedings more regular, and then, by a purchase at another sheriff's sale bring the suit in his own name.

We forbear expressing our sentiments on one point warmly pressed by Mr. *Rawle.* Whether a sale of lands under a later judgment can in any degree affect the lien of a prior judgment; whether such first sale can vest the title of the lands in a purchaser, so that the same cannot be again sold under a prior judgment, being considered as analogous to the sale of goods in *England* under a later execution; or whether any subsequent acts of the oldest judgment creditor, such as the receipt of a part of the purchase money in discharge of his debt upon a sale under a third judgment, will take away all recourse to the lands from the intermediate judgment creditor, are questions of much public moment, which deserve great consideration, but which it is unnecessary to decide at present. It is sufficient to state that differ-

1809.

YOUNG
*v.*
TAYLOR.

1809.

YOUNG
v.
TAYLOR.

ent opinions have been entertained by professional gentle- men of great respectability on these points, and that it will be time enough to determine them when they come directly before us. I again repeat that we say nothing of the title to these lots of ground; but we are fully satisfied on the grounds of irregularity and abuse of the process of this court, that this sheriff's deed should not receive the sanction of our court.

Acknowledgment refused.