Appeal by HENRY BETZ, JOSEPH HIESTER, LEWIS REES, and MICHAEL RAEFSNYDER, ISAAC M. YOUNG, and JACOB FRITZ.

The issuing of a *fieri facias* within a year and a day, and a levy upon personal property, subject to former levies, or on personal property as per inventory annexed, or a return of *nulla bona,* does not keep alive the lien of a judgment beyond five years, from the return day of the term to which it is entered.

Upon a transcript of the judgment of a justice of the peace, entered as a lien upon land, the five years within which a *scire facias* shall issue, to preserve the lien, must be computed from the first day of the term to which it is entered, and not from the actual date of the entry.

This case came up by appeal from the decree of the court of Common Pleas of Berks county, distributing the proceeds of the sale by the sheriff, of the real estate of *Samuel Krauser, Adam Krauser,* and *Daniel Krauser.*

The real estate was sold on the 2nd November, 1829, and the sum of two thousand five hundred and ninety-seven dollars and thirty-seven cents, being brought into court for distribution, the matter was referred, by consent, to three commissioners, who made

(Appeal by Henry Betz, Joseph Hiester, Lewis Rees, and Michael Raef-
    snyder, Isaac M. Young and Jacob Fritz.)

a report to the court, allowing the following judgments, the cir-
cumstances of which, gave rise to the points which are settled by
this court.

| *Jacob K. Boyer*, for the use of | Of August term, 1821, No. 47. |
| *Henry Betz*, | Judgment entered, 18th Sep- |
| v. | tember, 1821. Real debt, |
| *John Krauser & Samuel Krauser.* | $280 31. |

*Fi. Fa.* to August term, 1822, returned "Levied on personal
property subject to prior executions." *Vend. expos.* to January, 1823,
returned "unsold." *Fi. fa. post. vend. expos.* to April term, 1827,
returned "*Tarde venit.*" April 14th, 1827, rule to show cause
why the execution should not be set aside, and defendants let into
a defence, May 18, 1827; rule made absolute, judgment to remain
as security. *Scire facias* to August term, 1827, and 1st June, 1829,
judgment by report of arbitrators, for four hundred and twenty-
nine dollars and fourteen cents.

| *Same plaintiffs.* | Of April term, 1822, No. 89. Judgment enter- |
| v. | ed, 8th February, 1822. Real debt $153,33. |
| *Same defendants.* | |

Alike proceedings were had upon this judgment as the first; the
same returns were made thereto; the same rule entered; *scire facias*
issued the same time, and on the 1st June, 1829, judgment by
report of arbitrators, for two hundred and thirty-six dollars and
eleven cents. To the allowance of these two judgments by the
commissioners, the following exceptions were filed in the Common
Pleas, by *Jacob Hawk*, a subsequent judgment creditor.

1st. That the executions issued upon the said judgments were
levied upon personal property, sufficient to satisfy the same.

2nd. Because said judgments were not revived agreeably to
the act of assembly, or the lien continued beyond five years, from
the first return day of August term, 1821, under the then existing
laws.

The court of Common Pleas overruled the first exception, and
sustained the second, from which *Henry Betz*, appealed.

| *Mills* and *Reese*, | Of January term, 1823, No. 10. Tran- |
| v. | script of a judgment from the docket |
| *John* and *Samuel Krauser.* | of a justice, for $66 48. |

Entered, 11th January, 1823.

*Scire facias* issued 7th January, 1828, to April term, 1828, upon
which judgment was entered.

There was another transcript of a judgment at the suit of the
same plaintiffs, against the same defendants, entered at the same
time, and depending upon the same circumstances. To the allow-
ance of these two judgments, *Jacob Hawk*, also filed an exception.

(Appeal by Henry Betz, Joseph Hiester, Lewis Rees, and Michael Raef-snyder, Isaac M. Young, and Jacob Fritz.)

That the said judgments were not liens on the real estate sold, they not having been revived within five years from the first return day of January term, 1823, agreeably to the act of assembly.

The 6th January, was the return day of January term, 1823.

This exception was sustained by the court of Common Pleas, and *Lewis Rees,* appealed.

> *Joseph Hiester, Esq.*     Of November term, 1823, No.
> v.     112. Judgment entered, 10th
> *Adam, Samuel,* and *John Krauser.*     Nov. 1823, for $400.

*Fi. fa.* to January term, 1824, returned " levied on personal property, as per inventory annexed." *Vend. expos.* to April term, 1824, returned " stayed by plaintiff." *Als. vend. expos.* to August term, 1824, returned " property sold to the amount of sixty-nine dollars and thirty-nine cents," and this amount has been deducted from the interest and costs in the above case. *Scire facias* issued to January term, 1829. Exception was also filed by *Jacob Hawk,* to the allowance of this judgment.

That the same had not been revived by *scire facias* within five years from the return day of the term to which it was entered.

This exception was also sustained by the court of Common Pleas, and *Joseph Hiester,* Esq. appealed.

> *Michael Raefsnyder, Isaac M.*
> *Young,* and *Jacob Fritz,*     Of January term, 1824, No. 10.
> v.     Judgment entered, 12 January,
> *Samuel, John* and *Adam*     1824, for $367 73.
> *Krauser.*

*Fi. fa.* to November term, 1824, returned " *nulla bona.*"

> *Jacob Hawk,*     Of January term, 1824, No. 11.
> v.     Judgment entered, 12th Janua-
> *Samuel, John & Adam Krauser.*     ry, 1824, for $1560.

*Fi. fa.* to January term, 1824, levied on real estate, inquisition held, and the same condemned. *Scire facias* to January term, 1829, and judgment thereon.

The commissioners reported that a balance of five hundred and ninety-one dollars and eighty-five cents, which remained after the payment of prior liens, should be divided rateably between these two judgments.

To which *Jacob Hawk* excepted. That his judgment should be paid before any money should be appropriated to the judgment of *Raefsnyder, Young* and *Fritz,* which had lost its lien.

This exception was sustained by the court of Common Pleas, and *Raefsnyder, Young* and *Fritz,* appealed.

In this court, the appellants assigned as error, the opinion of the court in the several foregoing decrees.

(Appeal by Henry Betz, Joseph Hiester, Lewis Rees, and Michael Raef-
snyder, Isaac M. Young, and Jacob Fritz.)

*Baird*, for appellants.

There are two questions which arise out of this case. First,
whether the issuing of a *fi. fa.* within a year after the entry of the
judgment will keep alive its lien beyond the period of five years.

And second. Whether upon a transcript of a judgment from the
docket of a justice, the five years shall be computed from the *first
day of the term* to which the judgment was entered, or from the
actual date of its entry upon the docket.

The affirmance of the opinion of the court below, on the first
point, will establish a doctrine differing from the received opinion
of the bar, and uniform practice of all the courts in Pennsylvania,
and which grew out of the judicial decisions of our own courts.
The question first came before the court, in the case of *Young* v.
*Taylor*, 2 *Bin.* 218, where it was ably argued, and received the
deliberate consideration of the court, and where it was held, that
the issuing of a *fi. fa.* would keep alive the lien of a judgment. The
next case is that of *Lewis* v. *Smith*, 2 *Serg. & Rawle*, 142, where the
same doctrine is held, and predicated upon the construction, which
practice had given to the statute of Westminster the 2nd, and our
own statute of the 4th April, 1798. In the case of *Pennock* v.
*Hart*, 8 *Serg. & Rawle*, 369, *Young* v. *Taylor*, is approved; and in
*Pennock* v. *M'Kisson*, 13 *Serg. & Rawle*, 144, the whole scope of the
argument of *Duncan Justice*, recognizes the cases of *Young* v. *Tay-
lor*, and *Pennock* v. *Hart*, as being sound law. The *quere* which is
put in the case of *Pennock* v. *M'Kisson*, is the *quere* of the reporters,
and not authorized by the case itself: in the argument of that case,
by Mr. *Hepburn*, who is a member of the bar of great experience
and learning, and whose opinion in matters of practice will have
weight, this position which we contend for is admitted. The case
now at bar is a strong illustration of what we considered the settled
law to be. In the case of the 26th March, 1827, *Pam. laws*, 129,
we have the understanding of the legislature of what the practice
was, for therein they provide that a *scire facias* shall issue, *notwith-
standing an execution had issued.* If then, on this subject, the un-
derstanding and practice has been uniform and extensive, the evils
of a different construction would be innumerable; this result the
court will not produce, unless the evils of the present system are
correspondingly great.

When the act of 1798 was passed, the legislature had in view
the practice of entering judgments upon warrants of attorney, and
did not contemplate the case of transcripts, which at the passage of
that law, there was no authority to enter on the county docket.
But the 20th section of the act of 20th March, 1810, *Purd. Dig*,
454, which authorizes the entry of a transcript, provides that from
*the time* of such entry, it shall bind the real estate of the defendant

(Appeal by Henry Betz, Joseph Hiester, Lewis Rees, and Michael Raef-
snyder, Isaac M. Young, and Jacob Fritz.)

*H. W. Smith,* for the appellee.

Prior to the act of 4th April, 1798, judgments were a lien on real
estate for an indefinite period; by that act it ceases to be a lien,
unless revived by *scire facias,* within five years from the return day
of the term to which it is entered. This act is as clear and com-
prehensive as it is positive in its terms: it was evidently intended
for the benefit of purchasers, and subsequent lien creditors. The
*scire facias, post annum et diem,* is given by the statute of Westmins-
ter 2nd, and is intended for the benefit of the defendant in the
judgment, that he may have an opportunity of showing that the
debts paid, since the rendition of the judgment; so that there is
no analogy between the two acts—the decisions that have taken
place under the one, cannot be applied to the other.

The point now before the court, did not arise in the case of *Young*
v. *Taylor,* there, there was no levy on personal property, the levy
was on the two lots against which the lien was sought to be enforc-
ed, but further proceedings were directed to bring the matter be-
fore the court. So far as this point was noticed, was only by a
*dictum* of Judge *Yeates,* which was not called for, and which, as is
said by senator *Platt,* in 9 *Johns. Rep.* 415; and *Huston, J.* in 17
*Serg. & Rawle,* 292; and *Gibson, C. J.* in 7 *Serg. & Rawle,* 76, is
always uncertain authority for what the law is. There is a *dictum*
of Judge *Duncan,* in 9 *Serg. & Rawle,* 311, that the mortgagee has
the right to the actual possession of the land, one year after the
*last* day of payment; but when the point came directly before the
court, in 12 *Serg. & Rawle,* 240, it was decided that the mortgagee
was entitled to recover *before* all the payments were due. But since
the case of *Young* v. *Taylor,* this court decided that so far as re-
spects third persons, a levy on personal property discharges the
lien of the judgment to the value of the property levied. *Hunt* v.
*Breading,* 12 *Serg. & Rawle,* 37. *Dean* v. *Patton,* 13 *Serg. & Rawle,*
341. *Duncan* v. *Harris,* 17 *Serg. & Rawle,* 436. *United States* v.
*Stewart,* M. S. case, Pittsburg, September, 1828. In *Lewis* v. *Smith,*
the levy was on personal property, there was no question of lien as
to land. If an execution be issued within a year and a day, an
*alias* may issue at any time afterwards, without a *scire facias,* to
obtain satisfaction of the debt, but not to continue the lien of the
judgment: the existence of the debt and its lien are not insepara-
ble; the lien may be waived, and the debt still continue. *The
Bank of Pennsylvania* v. *Winger,* 1 *Rawle,* 295.

The case of *Pennock* v. *Hart,* has been much shaken in its
authority, even by the present Chief Justice, who delivered that
opinion of the court, for he has said that he is less confident of the
soundness of that decision, than when it was pronounced, and in
the *Commonwealth* v. *Conard,* 1 *Rawle,* 253, Justice *Smith,* says,

36

(Appeal by Henry Betz, Joseph Hiester, Lewis Rees, and Michael Raef-
        snyder, Isaac M. Young, and Jacob Fritz.)

"indeed very few lawyers foresaw, or expected the decision of
*Pennock* v. *Hart.*" It is restricted in its application, in *Black* v.
*Dobson,* 11 *Serg. & Rawle,* 94; and in *Bombay* v. *Boyer,* 14 *Serg.
& Rawle,* 253. In the *Commonwealth* v. *M'Kisson,* the lien is con-
fined to the particular lands levied on ; and there the court seemed
reluctant to go even that far. *Chahoon* v. *Hollenback,* 16 *Serg. &
Rawle,* 425, is the last case on the subject, and where *Huston, J.*
reviews all the prior cases, and decides against the lien now asked
for.

The object of an execution is satisfaction of the debt, not security
for it ; and whenever an execution creates a lien, it is on the pro-
perty specifically levied, which is necessary to render the process
effectual, until satisfaction is obtained. A levy on a particular
tract of land, is notice that the creditor has resorted to it for pay-
ment, and a lien is the consequence until it is obtained ; but a levy
on personal property, or a return of *nulla bona,* can give no such no-
tice : the former may induce third persons to believe that the judg-
ment creditor has resorted to the personal property, and received
satisfaction; and the latter is but notice, that no satisfaction was
obtained, which sufficiently appears by the unsatisfied judgment
on the docket. *Mills* and *Rees's* judgments, although transcripts
from the docket of a justice are entered for the purpose of lien on the
real estate, and are necessarily liable to all the legal consequences
incident to the lien of a judgment under the act of 4th April, 1798.

The opinion of the court was delivered by

SMITH, J.—(His Honour stated fully the facts of the case.)
The questions, which are to be decided here are. 1 Whether the
lien of a judgment, is continued beyond five years, from the first
return day of the term of which it is entered without a *scire facias*
to revive the same, by a *fieri facias* issued within a year and a
day, and returned, levied on personal property, subject to prior
executions, or, levied on personal property, as per inventory annex-
ed, or returned, "*nulla bona;*" and 2ndly. Whether the transcript
of a judgment of a justice of the peace, filed in the court of Common
Pleas, continues the lien five years from the day on which it was
actually entered, or five years from the first return day of the
term of which it is entered, according to the provisions of the act
of the 4th of April, 1798. With regard to this last question, we
find it impossible to draw a distinction between a judgment entered
by confession, or on verdict, and a judgment entered from a tran-
script of a justice. It was long ago decided, that judgments obtain-
ed before justices of the peace, when filed in the prothonotary's
office, are on the same footing with judgments in court. *Scott* v.
*Ramsey,* 1 *Bin.* 221. The words of the act of 1798, section 2, are,
that " no judgment hereafter entered in any court of record within

(Appeal by Henry Betz, Joseph Hiester, Lewis Rees, and Michael Raef snyder, Isaac M. Young, and Jacob Fritz.)

this commonwealth, shall continue a lien on the real estate of the person against whom such judgment may be entered, during a longer term than five years from the first return day of the term of which such judgment may be so entered, unless the person who may obtain such judgment, or his legal representatives, or other persons interested, shall, within the said term of five years, sue out a writ of *scire facias*, to revive the same." We have no doubt that the case of a transcript, is embraced both by the language and spirit of this provision, and we are unanimously of opinion, that the court below was correct in sustaining the exception to the allow· ance of *Rees* and *Mills'* judgments, as existing liens, five years from the first return day of the January term, 1823, having expired, when the *scire facias* was issued upon them respectively, though only by a single day. The other question does not admit of so easy a solution, nor are the members of this court unanimous respecting it. I may, however, state that four of us, concur in the opinion, that where the *fieri facias* is returned "*nulla bona*," the lien is not thereby continued on the land; and that a majority of the court consider that the lien is not continued by a *fieri facias*, returned levied on personal property, as per inventory annexed.

The act of 1798, limiting the time during which a judgment shall be a lien on real estate, &c. is imperative in its injunction, that *no* judgment shall continue a lien, unless a writ of *scire facias* be sued out within the time therein prescribed, to revive the same. It is true, that this excepting clause, has been extended by construction to the case of a *fieri facias* levied on lands, and also, to the case of a *cesset executio*, making the five years during which the *scire facias* may be issued, to commence at the expiration of the stay. There is no disposition in this court, to carry the construction beyond the decisions in the cases of *Young* v. *Taylor*, 2 *Bin.* 218. *Pennock* v. *M'Kisson*, 13 *Serg. & Rawle*, 144; and *Pennock* v. *Hart*, 8 *Serg. & Rawle*, 319. In the last mentioned case, the stay of execution was entered upon the record, and this entry has been decided, in subsequent cases to be essential to the extension of the period within which the plaintiff may issue a *scire facias* to revive his lien. Every effort to induce us to carry the construction beyond that point, has proved unavailing, and we have held, that no agreement between the parties for a stay, will be valid, as to third persons, unless it be placed upon the record at the time of entering the judgment. *Black* v. *Dobson*, 11 *Serg. & Rawle*, 94. *Bombay* v. *Boyer*, 14 *Serg. & Rawle*, 253.

In *Young* v. *Taylor*, the *fieri facias* was levied *on goods and land*; the very land in controversy, on which was held an inquisition, that condemned it. The *fieri facias* thus levied, with the inquisition and condemnation, was considered, in point of notice of the creditors pretensions, to be equivalent to the *scire facias* mentioned in the

act of the 4th of April, 1798, and to supersede that writ. Even
the letter of this case affords no support to the errors assigned by
the appellants, whose writs of *fieri facias*, were levied on personal
property alone; and if we regard its spirit and reason, which con-
stitute the real authority of every precedent, we shall be satisfied
that it cannot contribute in the least to sustain these appeals.
The act of assembly in question, was passed for the safety of pur-
chasers of real estate. The *scire facias* within five years was in-
tended as notice, that the judgment creditor still looked to the
land as security for his debt. His omission to sue it out affected
him in no other way, than by relieving the land from the lien of
his judgment. The purchaser, where a *scire facias* has been duly
sued out, is fully notified of the incumbrance, and of the creditor's
intention to regard the land as the fund out of which he expects to
be paid. Buying with notice, he cannot complain. "But," said
Judge *Yeates*, in 2 *Bin.* 229, "It will not be denied, that the plain-
tiff taking out a *fieri facias*, levying on goods and lands of the de-
fendant, and condemning the lands by an inquest, are matters of
notoriety, and in point of notice of the creditor's pretensions, tanta-
mount to a *scire facias*. Such I take it, has been the construction
of this section of the act." It was the notoriety of these proceed-
ings upon the judgment affecting the lands, that was thought to
supply the purpose of the *scire facias*, in giving notice of the plain-
tiff's intention *not* to relinquish his lien upon them. But how can
we infer such an intention from a *fieri facias*, levied upon personal
property only? In *Hunt* v. *Breading*, 12 *Serg. & Rawle*, 37, it was
decided, that a judgment creditor, who has seized the goods of his
debtor in execution, cannot discharge them, and leave his judgment
in force as to the land. See also, *Dean* v. *Patton*, 13 *Serg. & Rawle*,
341, and *Duncan* v. *Harris*, 17 *Serg. & Rawle*, 436. A levy on
personal property, cannot be considered as notice to a purchaser,
that the creditor means to rely on his lien upon the debtor's lands.
It is an indication of a different intention. The *fieri facias* itself is
no lien upon the land, until it is seized in execution by virtue of
the writ. It is a lien upon the defendant's goods from the time of
its delivery to the sheriff, and where goods of sufficient value are
actually seized in execution, the debt is extinguished, and the judg-
ment satisfied. In the fact of levying on personal property, what
is there, of actual notoriety, calculated to supply the notice by
*scire facias* of the creditors purpose to renew or revive his lien upon
the defendant's land? Certainly nothing. If then, we go to the
record, we find an entry of a *fieri facias* issued, and returned, "levied
on personal property." Is there any thing in this, that really in-
timates the creditor's design to maintain his lien upon the *land*?
On the contrary, the entry shows that the creditor has resorted
to the defendant's goods, for the satisfaction of his debt; and the

(Appeal by Henry Betz, Joseph Hiester, Lewis Rees, and Michael Raef-
snyder, Isaac M. Young, and Jacob Fritz.)

legal consequence is, that he is not at liberty to give them up, and proceed against the land.   In the case of *Pennock* v. *McKisson*, 13 *Serg. & Rawle*, 144, the decision, was, " barely on the effect of a levy on particular lands, preserving the lien on the land levied," without a *scire facias* to revive; and it was decided on the authority of *Young* v. *Taylor*, that it was sufficient for that purpose, though, Judge *Duncan*, who delivered the opinion of the court, declared, that if the matter were *res integra*, he would have given a different decision.

Upon the present question, I consider this court, as untrammeled by former decisions.   We have the plain and unequivocal enactment of the legislature for our guide, without any reason to suppose, that if they had foreseen the case now under consideration, they would have employed one word more or less, in order to bring it within the exception to their limitation.   There is no instance in which a *fieri facias* levied merely upon personal property, has been held to be within that exception; nor can the decisions or practice under the statute of Westminster 2d, in my opinion, warrant such a construction, in relation to a *fieri facias* thus executed.   The object and character of that statute, and of our act of the 4th of April, 1798, are indeed so different, that I am at a loss to discover the propriety of reasoning from one to the other.

In fine, we think, that as *no scire facias* was sued out, according to the second section of the act of the fourth of April, 1798, to revive the judgments of *Jacob K. Boyer*, for the use of *Henry Betz*, and the judgment of *Joseph Hiester*, Esquire, within five years from the first return day of the term, of which they were respectively entered, they did not continue a lien on the real estate of the defendants therein named beyond that period, notwithstanding the *fieri facias* issued upon them, and levied on the personal property of those defendants.   The appellee, *Jacob Hawk* had issued a writ of *scire facias*, to continue his lien, so that in fact, the case was between those who had complied with the law, and those who had disregarded it.

Gibson, C. J.—No man is more ready than I, to admit the fallacy of the construction in *Young* v. *Taylor*, but as it has laid the foundation of a practice extensively adopted, I think that the germ of much evil is discernible in the present departure from it.   The importance of that case is not derived from the point directly decided, but from the breadth of a principle asserted in it, that " no change was intended in the mode of keeping judgments alive, by issuing an execution within the year and day, superseding the necessity of issuing a *scire facias* under the statute of Westminster the second."   Since that statute, the judgment was kept alive by the issuing and continuance of an execution, without regard to the

(Appeal by Henry Betz, Joseph Hiester, Lewis Rees, and Michael Raef-
  snyder, Isaac M. Young, and Jacob Fritz,)

circumstances of a levy, which was considered to be immaterial;
and I feel confident that on the authority of this *dictum,* the same
practice has prevailed in many parts of the state, as uninterrupt-
edly since the act of assembly, as it did before.   To follow it to the
point at which it has been arrested by the legislature, would pro-
duce no material inconvenience ; for although little accordant with
the letter or spirit of the act, I am not aware that it has ever pro-
duced injustice : what the consequences of overturning it may be
retrospectively, no man can foresee.   Purchasers have reposed on
it for twenty years; and to deprive them of a title founded in a
practice repeatedly recognized by judicial decision, ought to require
the presence of an overruling mischief, which, it seems to me, does
not exist.   I am, therefore, averse to any change, particularly in
what seems to me to have become a rule of property ; and I am
happy to say my brother ROGERS, is of the same opinion.

   The judgment and decrees of the court of Common Pleas, are
affirmed.

   ROGERS, J.—Concurred with the Chief Justice.