Curia, per

O’Neall, J.
It has been a generally received opinion, that an arrest under a ca. Sa. was a satisfaction at common law of the debt; but of its correctness, unless actual satisfaction resulted from it, or the defendant, under the provisions of some insolvent law, was discharged from both the confinement and the debt itself, I have always entertained great doubts. The doctrine was first broadly laid down, in the case of Foster vs. Jackson, by Ch. J. Hobart, in the 12th year of James I. Hob. 52. The reasons for his opinion, that the death of the party in execution discharged his heirs, executors or administrators, from any liability, either do not sustain the position which he assumes, or are not now law. He contends that the body of the debtor is not susceptible of a value, and is the highest satisfaction known to the law. During the time the party is in confinement, there may be some force in this reason : for then it is uncertain that actual satisfaction may not result from it. But after it is ascertained, by the death or escape of the party, or his discharge by operation of law, that the body of the debtor has not paid the debt, there can be no longer any legal presumption of satisfaction. At page 59, he concedes that “ it is not an actual satisfaction ; no, not between the parties, according to Hil-leane’s case, 33 H. 6, 47, for, without doubt, it is no satisfaction to common speech nor to a foreign plea,” If it is not actual satisfaction, nor to common speech, nor to a foreign plea, it cannot be satisfaction at all. For there can be only two kinds of satisfaction, actual and legal. Actualj is where payment in money,, or its equivalent, is made of the debt — legal, is where, from some act done by the party, or from lapse of time, the law presumes payment. *237 It is alone as a legal satisfaction that the arrest under a ca. sa. could ever have been conceived to be a satisfaction. But Ch. J. Hobart concedes that it cannot be pleaded in a foreign plea. A foreign plea may be defined tobe where the question is made between the same parties in another case, or between the creditor and a third party bound to pay the same debt: and, generally, where, by the pleadings, the question of satisfaction by the arrest under the ca. sa. comes in collaterally. Hillearie's case is an illustration of it. A bond was given for a judgment, and the party, on being sued on the bond, pleaded, that he was then in jail under the judgment — it was held to be no satisfaction. The arrest under the ca. sa. cannot be a legal satisfaction ; for if it was, it would be a good defence in any case brought upon any collateral undertaking for the same debt, it would be a satisfaction, in the language of Hobart, to a foreign plea. In Peacock vs. Jeffrey, 1 Taunt. 425, the plaintiff was in jail under a ca. sa. issued on a judgment recovered against him by the defendant — he, the plaintiff, sued and arrested the defendant for a debt less than his judgment, and the defendant was allowed to remit from his judgment against the plaintiff the debt sued for by the plaintiff, and thereupon all further proceedings were stayed on the payment of the costs. This shewed that the arrest was no legal satisfaction, even between the parties ; for if it had been even a presumed satisfaction, the set off could not have been allowed. Again, if the party arrested, under a ca. sa. escape, or is rescued, the plaintiff may “ take out any new execution,” and is not compelled to resort to his remedy against the sheriff. Bac. Abr. Execution, D. The arrest is, in this case, it is true, defeated; but still, if it was satisfaction the moment the body is taken, no subsequent event could change it. The party having legally accepted the body, if it stood in lieu of money, his remedy would be alone against the sheriff for the escape or rescue. It is perfectly obvious, from these authorities and reasons, that the arrest under a ca. sa. is neither actual or legal satisfaction. The true rule on the subject, is, so long as the creditor has the body of his debtor in execution, he cannot proceed on any other execution *238 against his lands or goods. One of the reasons assigned by Hobart for the doctrine of the case, (Foster vs. Jackson) is that there cannot be two executions at once. This, whatever it might have been in his time, is not now law. In the case of the State vs. Guignard, 1 McC. 176, it was held that the plaintiff might sue out at once a fi.fa. and a ca. sa. Mr. Justice Gantt, who ruled the point on the circuit, and who delivered the opinion of the constitutional court, said : “ The law is very clear that a plaintiff may, for his own security, take out two writs, but he can execute but one. It is thus settled in the case of Stamper vs. Hudson, 8 Mod. 303. The same principle is recognized in the case of Young vs. Taylor & Barron, 2 Bin. 230, where it is said, a plaintiff may take out one execution against the body of the defendant, and another against his goods at the same time, but both cannot be served.” It is, hence, clear, that this reason of Ch. J. Hobart, which is indeed the foundation of his whole argument, ought not now to have any weight. But even on the authority of Hobart in Foster vs. Jackson, I should doubt whether the arrest of the defendant under a ca. sa. and his death in execution, could be set up as a satisfaction by the junior execution creditor against the plaintiffs. For as between them it is a foreign plea, and in such a case it is no satisfaction. The difficulty in the case, however, arises out of the cases of Mairs vs. Smith, 3 McC. 52, and Cohen vs. Greer, 4 McC. 509, in which it was held that an arrest under a ca. sa. discharged the previous lien of the fi. fa. I am not prepared to say that these cases, when confined to the case of an arrest and discharge under the insolvent debtor’s, or prison bounds Act, which were the cases then before the court, are incorrect; but beyond these specific cases I should deny the authority of the rule. In Myers vs. Moye, (a) we held unanimously, that an arrest under a ca. sa. and a discharge by consent under the Act of 1815, did not destroy the lien of the fi. fa. The plaintiff has a right, for his security, to both a fi. fa. and a ca. sa. — he can proceed at the same time upon pnly one. But the fi. fa. from *239 the day of its lodgement with the sheriff, creates a lieu upon the defendant’s goods. This continues, whether the fi.fa. is active or dormant; and unless the arrest under the ca. sa. was of itself a satisfaction, it cannot have the effect to discharge the lien. In England there was no such thing as dormant liens ; in this-State they have been too long allowed to be now questioned, and this constitutes the reason why the English precedents can be no guide in deciding whether the lien of the execution is destroyed by an arrest under a ca. sa. But for the purposes oí this case, I regard the statute 21 J. 1, c. 24, P. L. 75, as clearly giving the plaintiff the right, to have the rule made absolute. It is a declaritory act, passed avowedly for the purpose of settling the doubt, whether the death of a person in execution was a satisfaction of the debt. It. provides “ that from and after the end of this present session of Parliament, the party or parties, at whose suit or to whom any person shall stand charged in execution for debt or damages recovered, his or their executors or administrators, may, after the death of the said person so charged and dying in execution, lawfully sue forth and have new execution against the lands and tenements, goods and chattels, or any of them, of the person so deceased, in such manner and form, to all intents and purposes, as he or they, or any of them, might have had by the laws and statutes of the Realm, if such person so deceased had never been taken or charged in execution ; provided always, that this Act shall not extend to give liberty to any person or persons, their executors or administrators, at whose suit or suits any such party shall be in execution, and die in execution, to have or take any new execution against any of the lands, tenements or hereditaments of such party so dying in execution, xohich shall at any time after the said jxidgment or judgmexits be by him sold bona fide, for the payment of any of his creditors, and the money xohich shall be paid for the lands so sold, either paid or secxvred to be paid to any of his creditors, with their privity and consent, ixi discharge of his or their due debts, or of some part thereof; any thing before in this Act to the contrary thereof in anyxoise notwithstandingP The effect of this Act is to restore the creditor, on the death of *240 his debtor in execution, to all the rights which he had before. He may sue out his ji. fa. on the judgment, if none before had been' issued; renew it, if its active energy is lost from lapse of time ; or, under the Act of this State, which allows an execution to run for several years before it requires renewal, he might, if a fi. fa. had issued, and the time it had to run had not expired, proceed under it to collect his debt. His liens exist on his debtor’s land from the day on which the judgment' is signed, and on his goods from the day on which the execution is lodged. He must be paid out of the lands and goods of his debtor according to these, subject to one exception made by the statute of James, and to another which necessarily results from an arrest and actual confinement under a ca.sa. Under the statute of James, if the debtor sells his lands and applies the proceeds to the payment of his debts bona fide while in confinement, the lands so sold cannot be again sold by the judgment creditor at whose suit he was confined. The object of a seizure of the body under a ca. sa. is during the continuance of the arrest to suspend the liens of the judgment and fi. fa. for it may be that it will produce actual' satisfaction. If, therefore, during this time, junior executions should sell the land or goods of the debt- or, I should hold that they would take the proceeds discharged of the lien of the judgment or fi. fa. of the creditor at whose suit the body of the debtor was taken in execution, and this constitutes the second exception to which I have alluded. But if the debtor h.as not himself sold his land, and applied bona fide the proceeds to the payment of his debts, or if junior executions have not sold his land or goods during the arrest, and after the death of the debt- or, the sheriff, under the execution at the suit of the creditor at whose suit he was confined, or under junior executions, makes money from the sale of either his lands or goods, there can be no doubt that the senior judgment or execution would be entitled to it, notwithstanding the death of the debtor in execution in that case. The motion to reverse the decision of the judge below, and to make the rule absolute, is therefore granted.
Johnson, J. and Martin, J. sitting for Harper, J. concurred.
*241 Note. — J. J. Schroter vs. Duncan Crawford. Before Gantt, J. at Chesterfield, Fall Term, 1833. This was a rule on the sheriff to pay over to the plaintiff the money collected by him in this case, during his, Schroter’s, confinement, as hereafter s’ated. The rule was resisted on the following facts. Daniel Holly obtained judgment against Schroter, on which a fi. fa. and a ca. sa. were issued. Under the ca. sa. Schroter was arrested, and had remained in close confinement about a year, and declared his intention to die in jail before he would pay the debt. Holly was insolvent, and Schroter’s jail fees, amounting to about $100, were unpaid. The sheriff claimed that these fees should be paid out of the money collected by him. Holly contended that the money should be paid to him, and Schroter contended that he was entitled to receive it. His Honor refused to make any decision in the case,'and discharged the rule. Schroter appealed, on the ground that his Honor should have declared the law' of the case, and ordered the money to be paid to him. Holly and the sheriff also appealed.

Curia, per

Johnson, J.
The cases of Richbourg vs. West, 1 Hill, 309, and Mazyck & Bell vs. Coil, are full upon the points, that the arrest of a defendant upon a ca. sa. is prima facie a satisfaction of the debt, so long as the defendant remains in custody, and that the plaintiff cannot proceed upon his Ji. fa. so long as he is in custody under the ca. sa. It is very clear, therefore, that Holly has no right to the fund in court, for he has the body of his debtor in satisfaction of his debt. I think it is equally clear, that the sheriff has no right to the fund. At the common law, neither the sheriff nor the plaintiff was bound to provide for- a debtor in execution; he was obliged to “ starve in the name of God,” unless he was able to maintain himself, or his friends would do it for him. At the common law, therefore, the sheriff had no right to look to the debtor in execution for his subsistence, unless upon a contract to pay, and there is no Act of the Legislature which gives him any remedy against the debtor. The Act of 1817 gives the sheriff a remedy against the plaintiff, in case of the inability or refusal of the defendant to pay the fees, but that gives him no right against the defendant. I am not prepared to say, that the mere act of accepting subsistence at the hands of the sheriff, w’ould not, under the circumstances, raise an implied promise to pay for it, if the debtor was able; but conceding that it does, that gives him only a right of action, and could not be adjudged in the form of a rule. The order of the circuit court is therefore reversed.
O’Neall and Harper, JJ. concurred.

 2 Bail. 9.